2008 ME 125

**Jeffrey A. DAVIS**

v.

**Robin ANDERSON.**

Supreme Judicial Court of Maine.

Argued: April 9, 2008.
Decided: July 29, 2008.

———

Lindsay Cadwallader, Esq. (orally), Pine Tree Legal Assistance, Inc., Portland, ME, for Robin Anderson.

Justin Andrus, Esq. (orally), Bath, ME, for Jeffrey Davis.

E. Anne Carton, Esq., Frayla A. Schoenfeld, Esq. (orally), Brunswick, ME, for Intervenors, Shirley and Eric Davis.

G. Steven Rowe, Atty. Gen., Janice Stuver, Asst. Atty. Gen., Augusta, ME, for the Attorney General.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1] Robin Anderson appeals from an order granting her son's paternal grandparents' motion to intervene in the parental rights and responsibilities case brought by her son's father, Jeffrey A. Davis, entered in the District Court (West Bath, *Field, J.*). Anderson contends that: (1) her interlocutory appeal should be heard because it meets the death knell exception to the final judgment rule; (2) the court erred in granting the grandparents' motion; and (3) 19–A M.R.S. § 1653(2)(B) (2007) is unconstitutional because it infringes on parents' fundamental rights.[1] We agree that this interlocutory appeal meets the death knell exception to the final judgment rule. We vacate the order allowing the Davises to intervene and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

[¶ 2] Robin Anderson gave birth to a son in June 2002, when she was a teenager. The child's father is Jeffrey A. Davis. Robin and Jeffrey had an abusive relationship and are no longer together. Robin is a recovering drug addict and Jeffrey has spent time in jail, twice for gross sexual assault and once for burglary.

[¶ 3] Until their son was eighteen months old, Robin, Jeffrey, and their child resided with Jeffrey's parents, Shirley and Eric Davis Sr. In January 2004, Robin moved out with the child, stayed with her mother for a brief time, and then moved into her own apartment for a year and a half. During that time, she and Jeffrey agreed that they would alternate providing primary residence for the child on a weekly basis. Because Jeffrey was living with his parents, the Davises cared for the child during the weeks Jeffrey was working and providing the child's primary residence. When Jeffrey went to jail in the summer of 2004, Robin became the child's only primary caretaker.

[¶ 4] Jeffrey was released from jail in September 2006. Robin and the child again lived with Jeffrey at the Davises' home for a short period of time because Robin was struggling with her drug addiction. In January 2007, Robin moved out, taking the child with her.

[¶ 5] In March 2007, Jeffrey filed a parental rights and responsibilities action against Robin. The Davises filed a motion to intervene in that case pursuant to M.R. Civ. P. 24(a), seeking an order of parental rights pursuant to 19–A M.R.S. § 1653(2)(C) (2007). The Davises soon amended that motion to allege that they were de facto parents of the minor child. On the eve of trial, they again amended their motion, this time requesting visita-

---

1. None of the mother's other arguments merit our discussion.

tion pursuant to 19–A M.R.S. § 1803 (2007) (Grandparents Visitation Act).

[¶ 6] In June 2007, the court held a hearing to determine whether the grandparents could intervene in the parental rights and responsibilities matter. At the hearing, Robin testified that she was working full-time, had been clean and sober for seven months, and was living in a stable home. She consented to supervised visitation for the grandparents at a time and place that was convenient for her within the confines of her work schedule. Robin also testified that she wanted their visitation to be supervised. The Davises argued at the hearing that they were seeking contact with the child pursuant to 19–A M.R.S. § 1653(2)(B). Their petition requested parental rights and responsibilities pursuant to 19–A M.R.S. § 1653(2)(C), but they did not wish to be required to establish jeopardy at such an initial stage of the proceedings.

[¶ 7] After the hearing, the court issued an order allowing the Davises to intervene on the issues of contact pursuant to 19–A M.R.S. § 1653(2)(B) and parental rights and responsibilities pursuant to section 1653(2)(C).[2] The court also granted Jeffrey's motion to appoint a guardian ad litem in the case and ordered the grandparents to pay all costs related to the guardian. The court ordered that Robin would continue to provide the child's primary residence.

[¶ 8] Robin filed this interlocutory appeal, contending that the motion court erred in granting the grandparents' motion to intervene and challenging the constitutionality of 19–A M.R.S. § 1653(2)(B).

## II. DISCUSSION

### A. Final Judgment Rule

[¶ 9] "An order establishing that a party has standing is not a final order and ordinarily, pursuant to the final judgment rule, is not immediately appealable." *Passalaqua v. Passalaqua*, 2006 ME 123, ¶ 7, 908 A.2d 1214, 1217. In order to be cognizable, appeals must be taken from a final judgment. *Bruesewitz v. Grant*, 2007 ME 13, ¶ 5, 912 A.2d 1255, 1257. An interlocutory appeal is immediately reviewable only if it falls within one of three, well-established exceptions: the death knell exception, the judicial economy exception, or the collateral order exception. *State v. Me. State Employees Ass'n*, 482 A.2d 461, 464–65 (Me.1984).

[¶ 10] "The death knell exception allows an immediate appeal from an interlocutory order when substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Passalaqua*, 2006 ME 123, ¶ 9, 908 A.2d at 1217 (quotation marks omitted). "A right is irreparably lost if the appellant would not have an effective remedy if the interlocutory determination were to be vacated after a final disposition of the entire litigation." *Id.* (quotation marks omitted). In *Passalaqua*, the District Court held that the grandmother who filed a petition for visitation rights pursuant to the Grandparents Visitation Act, 19–A M.R.S. § 1803, had established a sufficient relationship with her grandchildren, denied the mother's motion to dismiss the petition, and ordered the case to proceed to a hearing. *Id.* ¶¶ 3–5, 908 A.2d at 1215–16. In that case, we dismissed the mother's interlocutory appeal of the motion court's order. *Id.* ¶ 1, 908 A.2d at 1215. In determining

---

**2.** In its order, the court also dismissed the Davises' motion for intervention pursuant to the Grandparents Visitation Act because it requires a separate and distinct filing and contains its own procedural requirements.

that the mother's appeal did not meet the death knell exception to the final judgment rule, we reasoned:

> Although we recognize that the standing determination is an important prerequisite to forcing parents to litigate grandparent visitation, we are nevertheless satisfied that *vigilant application of all the safeguards provided in the Act will adequately protect parents' substantial rights*. In addition, permitting an exception to the final judgment rule in these cases would result in interrupted proceedings and undue delay, and would not constitute the best use of limited judicial resources. We therefore conclude that a decision that a grandparent has standing pursuant to section 1803(1)(B) is not immediately appealable.

*Id.* ¶ 3, 908 A.2d at 1218 (emphasis added).

[¶ 11] As the quoted language explains, we were satisfied in that case that the procedural safeguards contained in the Grandparents Visitation Act were sufficient to test whether "imposing the burden of litigation on the parent is justified by a compelling state interest." *Id.* ¶ 11, 908 A.2d at 1217. The requirement for that level of scrutiny was premised on our holding in *Rideout v. Riendeau*, 2000 ME 198, 761 A.2d 291, where we recognized that the Grandparents Visitation Act "provides a mechanism by which the State may intervene in the basic exercise of parents' rights to determine the care and custody of their children." *See id.* ¶ 21, 761 A.2d at 300. Because this mechanism constitutes state involvement in a way that clearly implicates parents' fundamental liberty interests, we held that the State is required to demonstrate that its actions serve a compelling state interest in order to pass constitutional muster. *Id.* ¶ 22, 761 A.2d at 300. We affirmed a holding that had been in place for sixty years to reiterate that a parent's right to care for and control his or her child should be

limited only for the most urgent reasons. *See id.* ¶ 24, 761 A.2d at 301 (citing *Merchant v. Bussell*, 139 Me. 118, 122, 27 A.2d 816, 818 (1942)).

[¶ 12] In this case, the motion court granted the grandparents' motion for intervention pursuant to M.R. Civ. P. 24(a)(2) and 19–A M.R.S. § 1653(2)(B), (C). The court specifically rejected Robin's argument that the Davises' petition should be considered with at least the same level of scrutiny as that required for a petition under the Grandparents Visitation Act. In so doing, the court erred.

[¶ 13] Recently, in *Conlogue v. Conlogue*, 2006 ME 12, 890 A.2d 691, we again discussed what state interests are important enough to justify a court's intrusion into family life pursuant to the Grandparents Visitation Act, and held that "the death of one parent in itself is not an urgent reason that justifies forcing the surviving parent into litigation under the Act." *See id.* ¶ 22, 890 A.2d at 699. We also noted that protecting the best interests of a child is not a compelling state interest. *Id.* ¶ 20, 890 A.2d at 699. We held that "forcing parents to defend against a claim for grandparent visitation is itself an infringement of their fundamental right to make decisions concerning the custody and control of their children. Such an infringement is subject to strict scrutiny, and must be narrowly tailored to serve a compelling state interest." *Id.* ¶ 16, 890 A.2d at 697.

■ [¶ 14] Both *Passalaqua* and *Conlogue* mandate the protection of parents' fundamental rights in the context of potentially burdensome litigation brought by grandparents requesting contact. When third parties, including grandparents, petition for contact or for parental rights and responsibilities pursuant to section 1653(2)(B) or (C), the parents' rights must be protected at least as well as they are

when grandparents pursue an action for visitation pursuant to section 1803. For that reason, a request for access to children pursuant to 19-A M.R.S. § 1653 must be considered with at least the same level of scrutiny.

■ [¶ 15] In an action brought under the Grandparents Visitation Act, grandparents must make an initial showing of the urgent reasons that justify their standing. *Conlogue*, 2006 ME 12, ¶ 20, 890 A.2d at 699; *see Rideout*, 2000 ME 198, ¶ 24, 761 A.2d at 301. In *Rideout* we held that urgent reasons exist when grandparents have acted as de facto parents. 2000 ME 198, ¶ 25, 761 A.2d at 301. No other urgent reasons have yet been identified.

■ [¶ 16] Here, although the trial court correctly held a limited hearing to determine whether the Davises had standing to participate in the family matters action pending between their son and the mother of their grandchild, it did not apply the correct level of scrutiny to the Davises' request for contact. Rather than determine whether the infringement of Robin's rights requested by the Davises was appropriate because the Davises were, as they claimed, the child's de facto parents, the trial court determined that the Davises had "sufficient connection with the child so that the court should decide whether or not it is in [his] best interest to award visitation or parental rights and responsibilities to Grandparents." Because the correct level of scrutiny was not applied, we cannot hold here, as we did in *Passalaqua*, that there was an appropriate application of safeguards adequate to protect Robin's rights as a parent. Robin's substantial rights will be irreparably lost if review is delayed until final judgment; the death knell exception to the final judgment

rule applies and we will consider Robin's interlocutory appeal.

**B. Grandparents' Motion for Intervention**

■ [¶ 17] In considering a petition to intervene pursuant to 19-A M.R.S. § 1653(2)(B),[3] the trial court must first determine whether the petitioners have standing to participate in the proceeding. In this case, the Davises asserted that their standing was based on their status as the child's de facto parents. The threshold question for the court, therefore, is whether the Davises can establish that they have a parent-like relationship with the child because they have "fully and completely undertaken a permanent, unequivocal, committed, and responsible *parental* role in [his] life." *See C.E.W. v. D.E.W.*, 2004 ME 43, ¶ 14, 845 A.2d 1146, 1152 (emphasis added). Such a determination could, in some cases, be made after a review of affidavits. In other cases, the court may hold a hearing similar to the one held by the trial court in this case, i.e., a discrete hearing focused on providing the court with sufficient evidence to decide whether the proposed intervenors can meet their burden of proof. On remand, the trial court may rely solely on the evidence already presented in determining whether the Davises have met their burden or, in its discretion, may decide to allow the parties to supplement that record.

**C. Constitutionality of 19-A M.R.S. § 1653(2)(B)**

■ [¶ 18] Parents have a fundamental liberty interest to direct the care, custody, and control of their children, *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Rideout*, 2000 ME 198, ¶ 18, 761 A.2d at 299. We understand this fundamental right to

---

3. As mentioned above, although the Davises cited section 1653(2)(C) in their pleading,

their claim at hearing was for contact, pursuant to section 1653(2)(B).

be firmly established. *See, e.g., Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Rideout*, 2000 ME 198, ¶ 18, 761 A.2d at 299; *Osier v. Osier*, 410 A.2d 1027, 1029 (Me.1980).

 Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will *normally* be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Rideout*, 2000 ME 198, ¶ 18, 761 A.2d at 299 (quoting *Troxel*, 530 U.S. at 68–69, 120 S.Ct. 2054). Robin asks us to find that section 1653(2)(B) is unconstitutional because it infringes upon parents' constitutionally protected rights to direct the care and custody of their children.

 [¶ 19] As we stated in *Rideout*, when grandparents have acted as the primary caregivers and custodians "for a child over a significant period of time, the relationship between the child and the grandparent[s] warrants application of the court's *parens patriae* authority on behalf of the child and provides a compelling basis for the State's intervention...." *Id.* ¶ 27, 761 A.2d at 302. The Davises have asserted that they did and do have that type of relationship with their grandson. Applying the safeguards discussed in that case to the Davises' request for contact pursuant to 19–A M.R.S. § 1653(2)(B) provides the same narrowly tailored action to serve the previously-identified compelling state interest, and allows the statute to be applied constitutionally to the facts of this case.

The entry is:

Order vacated. Remanded to the District Court for further proceedings consistent with this opinion.