2008 ME 152

**Mary E. PHILBROOK et al.**

v.

**Lynn THERIAULT et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 29, 2008.

Decided: Oct. 7, 2008.

---

S. James Levis, Jr., Esq., Levis & Ingraham, P.A., Saco, ME, for David and Mary Philbrook.

Jacquelyn Hadam, Student Attorney, Deirdre M. Smith, Faculty Supervisor, Cumberland Legal Aid Clinic, University of Maine School of Law, Portland, ME, for Lynn Theriault.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] Mary E. and David R. Philbrook appeal from a judgment entered in the District Court (Bridgton, *Beaudoin J.)* dismissing their complaint for parental rights and responsibilities regarding their grandsons on the ground that they lack standing to proceed. The Philbrooks contend that they functioned as the boys' de facto parents for substantial periods of time and that the District Court erred when it dismissed their complaint. We affirm the dismissal.

## I. BACKGROUND

[¶ 2] The following facts are taken from the parties' affidavits and the procedural record. The Theriault children are the sons of Lynn and Gary Theriault. Lynn is the daughter of David and Mary Philbrook. In early 1996, when Lynn became pregnant with her youngest son, she and her older son moved in with the Philbrooks as a result of Lynn's need for assistance with a difficult pregnancy. Following the youngest child's birth, Lynn and her sons remained in the Philbrook home until March 1997 when Lynn had fully recovered from her pregnancy and delivery.

[¶ 3] Shortly thereafter, Lynn and the boys moved back in with the Philbrooks due to marital difficulties between Lynn and Gary. In June 1998, however, Lynn and Gary attempted reconciliation, and she and the boys moved back into the family home. Although they had moved out of the Philbrooks' home, the boys continued to stay at their grandparents' home for some period of time each school week because their parents both worked on a schedule that required them to be at work

early each morning and sometimes to work into the night. When the boys stayed overnight, Lynn would frequently either stay at the Philbrooks' home or remain there in the evenings until the boys went to bed.

[¶ 4] In June 2004, Lynn filed for divorce. Several months later, Lynn and the boys moved back in with the Philbrooks. The Philbrooks intervened in the divorce proceeding, and in February 2005, the court entered an order agreed upon by the parties in the divorce action directing that the boys' primary residence be with the Philbrooks. At the time this order was entered, Lynn also lived with the boys at the Philbrook residence.

[¶ 5] By the fall of 2005, Gary and Lynn had reconciled and were again living together. In November of that year, the District Court modified its order regarding the children's residency and ordered that the parents share the residence of the boys.

[¶ 6] In June 2006, Lynn moved to dismiss the divorce case. In August, the divorce court signed an order dismissing all claims but staying the dismissal until September 8, 2006. The court ordered that, if the Philbrooks filed a new action seeking rights of contact or parental rights by that date, the stay would remain in effect until either (1) an interim order was entered in that case, or (2) the stay was terminated in the divorce case.

[¶ 7] On September 8, 2006, the Philbrooks filed a complaint seeking parental rights and responsibilities regarding their grandsons on the basis that they were the boys' de facto parents and as third parties pursuant to 19–A M.R.S. § 1653(2)(C) (2007).[1] At the end of September, Lynn moved to dismiss the Philbrooks' complaint.

[¶ 8] During the following month, before any action had been taken on Lynn's motion to dismiss the Philbrooks' complaint, the divorce court terminated the stay of dismissal in the divorce proceeding. As a result, the Theriaults had exclusive custody of their children again. Marital problems later arose between the Theriaults, however, and Lynn filed a new action for divorce in April 2007. Lynn and the boys then moved back in with the Philbrooks.

[¶ 9] In September 2007, the court denied Lynn's motion to dismiss the Philbrooks' parental rights and responsibilities complaint. The court ordered the parties to file affidavits concerning the facts upon which their respective claims about the de facto parent status of David and Mary Philbrook were based.

[¶ 10] In October, in the divorce proceeding, Lynn obtained exclusive possession of the marital home through an interim order, and she and the boys moved out of the Philbrooks' home at that time. Within the same month, the court entered a final divorce judgment allocating parental rights and responsibilities by agreement between Gary and Lynn.

[¶ 11] The Philbrooks filed affidavits in support of their de facto parent status in

1. The full text of 19–A M.R.S. § 1653(2)(C) (2007) provides:

    **2. Parental rights and responsibilities; order.** This subsection governs parental rights and responsibilities and court orders for parental rights and responsibilities.

    . . . .

    **C.** The court may award parental rights and responsibilities with respect to the child to a 3rd person, a suitable society or institution for the care and protection of children or the department, upon a finding that awarding parental rights and responsibilities to either or both parents will place the child in jeopardy as defined in Title 22, section 4002, subsection 6.

the parental rights and responsibilities action in late October 2007. Lynn filed her affidavit in early November. According to Lynn's affidavit, she has always had primary caretaking responsibility for both of her sons. Lynn asserts that she and Gary make the decisions about the boys' education and medical care, and that she meets with the boys' teachers to work on their individualized education plans. She also asserts that she and Gary make all decisions about discipline, extracurricular activities, household chores, and homework.

[¶ 12] The Philbrooks aver in their affidavits that they were the primary caretakers for the children from 1996 until 2005. The Philbrooks maintain that they shared the primary parental responsibilities for the children because Lynn had been devastated by earlier life events and because living conditions in the Theriault trailer were less than hospitable. The Philbrooks' affidavits state that they were also the primary providers of any medical care the boys needed. They indicated in their affidavits that they paid most of the expenses associated with the boys' medical care. They allege that they intervened in the divorce proceedings between Lynn and Gary because the boys' guardian ad litem felt that Lynn and Gary might have been using drugs.

[¶ 13] A family friend of the Philbrooks also filed an affidavit indicating that she visited the Philbrook home often and that, on the occasions when she visited, she observed Mary and David Philbrook providing primary care for the boys, but observed Lynn in the Philbrook home with the boys very infrequently.

[¶ 14] After reviewing the pleadings and the affidavits, as well as taking judicial notice of the divorce proceedings between Lynn and Gary Theriault,[2] the court determined that the Philbrooks did not have standing to seek parental rights and responsibilities as de facto parents.[3] The court dismissed the Philbrooks' complaint with prejudice. The Philbrooks timely appealed.

## II. DISCUSSION

### A. Procedure

[¶ 15] The procedure used by the court to settle the question of the Philbrooks' standing is instructive. Before requiring the parents to invest the time and resources to engage in a full evidentiary hearing on the issue of the Philbrooks' status as de facto parents, the court ordered both the Philbrooks and the Theriaults to submit affidavits detailing facts that would either support or refute that status. After examining the affidavits, the court made the determination that the Philbrooks had not made a prima facie showing that they qualified as de facto parents and dismissed their claim without holding a hearing.

[¶ 16] The court's reliance on the parties' affidavits to determine whether the Philbrooks had demonstrated, at a prima facie level, the potential to qualify as de facto parents was drawn from the process established by *Rideout v. Riendeau,* 2000 ME 198, ¶¶ 29–30, 761 A.2d 291, 302–03.

---

2. Although the Philbrooks argue that the court should not have taken judicial notice of the divorce proceedings, we discern no error in the court's consideration of the divorce records. *See Currier v. Cyr,* 570 A.2d 1205, 1208 (Me.1990).

3. The court also determined that the boys would not be in jeopardy if the Philbrooks were not awarded parental rights and responsibilities. The Philbrooks have also appealed from this determination. We find this argument unpersuasive and do not address it further.

We recently endorsed a similar process in cases involving intervention by grandparents in parental rights proceedings pursuant to 19–A M.R.S. § 1653(2)(B) (2007), which permits a court to award reasonable rights of contact to a third person in a parental rights and responsibilities order. *See Davis v. Anderson,* 2008 ME 125, ¶ 17, 953 A.2d 1166, 1171.

[¶ 17] Efforts by grandparents, or others, to obtain parental rights through litigation, over the objections of parents, implicate the parents' fundamental right to direct the upbringing of their children. *See Rideout,* 2000 ME 198, ¶¶ 21, 30, 761 A.2d at 300, 302–03. To balance the Theriaults' fundamental rights with the Philbrooks' legitimate interest in asserting their status as de facto parents, the court appropriately obtained affidavits from the parties to determine whether the Philbrooks had established a prima facie case that they were de facto parents of their grandsons. *Id.; see also Davis,* 2008 ME 125, ¶ 17, 953 A.2d at 1171.

## B. De Facto Parent Status

[¶ 18] In the absence of a determination that a child would be in circumstances of jeopardy if placed with either parent, grandparents may seek parental rights or contact with their grandchildren over the objections of parents in two ways: (1) grandparents may seek visitation rights pursuant to Maine's Grandparents Visitation Act, 19–A M.R.S. §§ 1801–1805 (2007), *amended by* P.L. 2007, ch. 513, § 4 (effective June 30, 2008) (to be codified at 19–A M.R.S. § 1803(8)(A)); *see generally Rideout,* 2000 ME 198, 761 A.2d 291, or (2) they may, as the Philbrooks have done, file a parental rights and responsibilities proceeding, demonstrate to a court that they are the de facto parents of their grandchildren, and seek parental rights and responsibilities in accordance with that status, *see C.E.W. v. D.E.W.,* 2004 ME 43, ¶¶ 9–10, 845 A.2d 1146, 1149–51.[4]

[¶ 19] When any person who is not a legal parent, including a grandparent, seeks to have the court declare that that person is a de facto parent to a child over a parent's objection, the court must make a preliminary determination that such a relationship does in fact exist before a parent can be required to fully litigate the issue. *See, e.g., Davis,* 2008 ME 125, ¶ 17, 953 A.2d at 1171; *Rideout,* 2000 ME 198, ¶ 30, 761 A.2d at 302–03. This determination establishes whether a party has standing to seek the relief requested. *See Davis,* 2008 ME 125, ¶ 17, 953 A.2d at 1171 (characterizing the determination whether a party can establish a de facto parent relationship as a standing issue that poses a "threshold question for the court"); *Rideout,* 2000 ME 198, ¶ 30, 761 A.2d at 302 (citing 19–A M.R.S. § 1803(1) (entitled, "Standing to petition for visitation rights")).

[¶ 20] Our standing requirement is prudential, with the basic premise being to

4. Grandparents may also present their home as a possible placement when a court has found that a child would be in circumstances of jeopardy if placed with either parent. *See* 19–A M.R.S. § 1653(2)(C) (2007); 22 M.R.S. § 4036(1), (1–A) (2007). This finding may be made either in a child protection proceeding, 22 M.R.S. § 4036(1), (1–A), or in a divorce or parental rights and responsibilities proceeding, 19–A M.R.S. § 1653(2)(C). A finding of jeopardy in either type of case must comport with the definition of "jeopardy" provided in the child protection statutes at 22 M.R.S. § 4002(6) (2007). If no child protection, divorce, or parental rights and responsibilities proceeding is pending, grandparents may also initiate a three-party child protection petition pursuant to 22 M.R.S. § 4032(1)(C) (2007), and seek care or guardianship of their grandchildren if jeopardy is found in that proceeding.

"limit access to the courts to those best suited to assert a particular claim." *Roop v. City of Belfast,* 2007 ME 32, ¶ 7, 915 A.2d 966, 968 (quotation marks omitted). The prerequisites necessary for a party to have standing depend on the context. *See id.*

[¶ 21]  Absent any argument that the court committed clear error in its factual findings regarding standing, *see Bissias v. Koulovatos,* 2000 ME 189, ¶ 6, 761 A.2d 47, 49, we address de novo the legal question of what is required to establish standing to seek parental rights and responsibilities as a de facto parent, *see id.*; 19–A M.R.S. § 1653 (2007), *amended by* P.L. 2007, ch. 513, §§ 2, 3 (effective June 30, 2008) (to be codified at 19–A M.R.S. § 1653(6–A)(A), (6–B)(A) (authorizing a court to enter an order regarding parental rights and responsibilities for a child)).

[¶ 22]  In this context, standing to seek parental rights and responsibilities requires a prima facie demonstration of de facto parent status. *See Davis,* 2008 ME 125, ¶ 17, 953 A.2d at 1171; *Rideout,* 2000 ME 198, ¶ 30, 761 A.2d at 302.  Although we have not precisely defined the parameters of the de facto parent concept, we have made clear that it is a doctrine that may be applied only in limited circumstances, *C.E.W.,* 2004 ME 43, ¶ 10, 845 A.2d at 1150–51, when the putative de facto parent has "undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life," *id.* 14, ¶ 845 A.2d at 1152.

[¶ 23]  We have never extended the de facto parent concept to include an individual who has not been understood to be the child's parent but who intermittently assumes parental duties at certain points of time in a child's life.  Rather, when we have recognized a person as a de facto parent, we have done so in circumstances when the individual was understood and acknowledged to be the child's parent both by the child and by the child's other parent.  *See C.E.W.,* 2004 ME 43, ¶¶ 2–4, 11, 13, 845 A.2d at 1147, 1151; *Stitham v. Henderson,* 2001 ME 52, ¶ 17, 768 A.2d 598, 603.

[¶ 24]  For instance, we held that a man was a de facto parent when he raised a child as his own for several years beginning upon the child's birth and later discovered that he was not the child's biological father through paternity testing. *Stitham,* 2001 ME 52, ¶¶ 2–3, 17, 768 A.2d at 599–600, 603.  In that case, the child, the mother, and the de facto father all behaved as if the de facto father was the child's father, biologically and emotionally, until blood testing proved otherwise.  *Id.* He and the child had a parent-child relationship, and he had been the child's legal father.  *Id.*

[¶ 25]  In another case, we held that a woman who had functioned as the mother of her partner's biological child for years, and who, by agreement with the biological parent, was raising the child as her own son, was also qualified as a de facto parent. *C.E.W.,* 2004 ME 43, ¶¶ 2–4, 11, 13, 845 A.2d at 1147, 1151.  In both *Stitham* and *C.E.W.,* the individual held to be a de facto parent served in a parental capacity, was understood by the child to be a parent, functioned as the parent of the child, and was accepted by the biological parent as a parent.

[¶ 26]  Here, the Philbrooks certainly demonstrated that they provided needed care for the boys, and as the court observed, that they have been "loving and helpful grandparents," but they were never thought to be the boys' parents.  Nor were they invited to be treated as parents by the Theriaults as in *C.E.W.* Rather, the Philbrooks functioned as caring grandparents for their grandsons during what was obviously a difficult period for the boys'

parents. The children were very fortunate to have had the love and stability that their grandparents provided during their parents' periods of turmoil. In the end, however, the Philbrooks' willingness to provide care for their grandsons was commendable, but the care they provided was not sufficient to transform them into the boys' de facto parents. The court did not, therefore, err in dismissing the Philbrooks' complaint for lack of standing based on a finding that the Philbrooks had failed to establish a prima facie case that they were de facto parents.

The entry is:

Judgment affirmed.