LEVY, J.,
with whom ALEXANDER, J., joins, dissenting.
[¶ 59] The Court’s desire to announce new standards for evaluating claims of de facto parenthood is understandable given the concept’s recent development and the absence of legislatively declared public policy. Our prior decisions provide sufficient guidance, however, for us to conclude that Pitts failed to prove his status as a de facto parent. Accordingly, the District Court’s judgment should be vacated on that basis, and this case should not be remanded for additional proceedings. Further, the new standards announced by the Plurality do not sufficiently account for the constitutionally protected interests at stake, do not achieve the Plurality’s stated purpose of clarifying the law, and are not required to fully and fairly decide this appeal. For these reasons, I respectfully dissent.
[¶ 60] I proceed by (A) addressing the constitutional requirement that a person seeking rights as a de facto parent demonstrate that the child would suffer harm if the person is not awarded parental rights, (B) critiquing the new standards announced by the plurality opinion regarding de facto parenthood, and (C) explaining why, under our existing precedent, Pitts failed to prove his status as a de facto parent.
A. The Constitutional Requirement of Harm
[¶ 61] When a state court entertains a complaint seeking a declaration of de facto parenthood, it engages in state action that implicates the constitutionally protected liberty interest a parent has in parenting his or her child free from state interference. See U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A; Davis v. Anderson, 2008 ME 125, ¶¶ 11, 18, 953 A.2d 1166 (citing Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49
*1190 (2000) (plurality opinion)).[21] This facet of individual liberty protected by the Fourteenth Amendment “is perhaps the oldest of the fundamental liberty interests recognized.” Troxel, 530 U.S. at 65, 120 S.Ct. 2054. “[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.” Id. at 66, 120 S.Ct. 2054. To protect this fundamental right, courts recognize “ ‘a presumption that fit parents act in the best interests of their children,’ ” including with respect to requests for third-party visitation or parental rights. Guardianship of Jewel M., 2010 ME 80, ¶ 4, 2 A.3d 301 (quoting Troxel, 530 U.S. at 68, 120 S.Ct. 2054); see also Davis, 2008 ME 125, ¶¶ 12-16, 953 A.2d 1166. Further, any state interference with this right must be narrowly tailored to serve a compelling state interest. Davis, 2008 ME 125, ¶¶ 11-13,19, 953 A.2d 1166.
[¶ 62] As recognized in our cases involving termination of parental rights, grandparent visitation, and guardianships, a compelling state interest requires a showing of some degree of harm or the threat of harm to the child before a court may interfere with the parental rights of a presumptively fit parent. See Guardianship of Jeremiah T., 2009 ME 74, ¶¶ 27-28, 976 A.2d 955 (recognizing that, because of the fundamental liberty interest at stake, a guardianship may only be maintained over a parent’s objection based on a showing of parental unfitness); In re Jazmine L., 2004 ME 125, ¶¶ 12, 14-15, 861 A.2d 1277 (addressing when serious harm or the threat of serious harm to a child may justify a finding of parental unfitness for purposes of terminating parental rights); Rideout v. Riendeau, 2000 ME 198, ¶ 24, 761 A.2d 291 (“ ‘The natural right of a parent to the care and control of a child should be limited only for the most urgent reasons.’ ” (quoting Merchant v. Bussell, 139 Me. 118, ¶ 122, 27 A.2d 816 (1942))); see also 18-A M.R.S. § 5-204(c) (2013) (permitting the court to appoint a guardian for a minor, absent consent of the minor’s parents, if “a living situation has been created that is at least temporarily intolerable for the child”); 22 M.R.S. § 4003(2) (2013) (authorizing the State to remove children from the custody of their parents “only where failure to do so would jeopardize their health or welfare”). Consistent with this precedent, the foundation for the judicially created concept of de facto parenthood is that courts may interfere with a parent’s lawful right to prevent his or her child from having a relationship with a person seeking de facto parent status only if ‘“measurable harm would befall the child on the disruption of that relationship.’ ” A.H. v. M.P., 447 Mass. 828, 857 N.E.2d 1061, 1069 (2006) (quoting Care & Protection of Sharlene, 445 Mass. 756, 840 N.E.2d 918, 926 (2006)); see also Blixt v. Blixt, 437 Mass. 649, 774 N.E.2d 1052, 1060-61 (2002).
*1191 [¶ 63] Although we have not previously-formulated a single standard to measure the degree of harm needed to pass constitutional muster, both our precedent and the relevant statutes demonstrate that the adverse consequences must be sufficiently serious that the child’s long-term physical, emotional, or developmental well-being will be threatened if de facto parenthood status is not awarded. This view is in harmony with the “urgent reasons” standard applied in Rideout and Merchant. See Rideout, 2000 ME 198, ¶¶ 22-27, 761 A.2d 291; Merchant, 139 Me. at 122, 27 A.2d 816. What was “urgent” in both cases was the “dramatic, and even traumatic, effect upon the child’s well-being” that would follow
from a parent’s decision to sever that child’s relationship with grandparents who had functioned as “primary caregiver[s] and custodian[s] for [the] child over a significant period of time.” Rideout, 2000 ME 198, ¶¶ 26-27, 761 A.2d 291 (quotation marks omitted); see Merchant, 139 Me. at 119-20, 122-24, 27 A.2d 816. Thus, an “urgent reason” that may justify state interference with a decision usually within the sole discretion of a fit parent is the need to prevent harm to the child. Maine is not alone in requiring proof of harm. Numerous other jurisdictions also require a showing of harm or the threat of harm to the child before a court may award contact or parental rights over the objection of a fit parent.[22]
*1192 [¶ 64] The jurisprudential basis for awarding a nonparent parental rights is to advance the State’s interest in protecting a child from being arbitrarily cut off from an important parental figure with whom the child has developed a significant emotional attachment. As one commentator has observed, “The bond created between a child and a caregiver is called attachment.... To ensure continuity of relationships and recognize a child’s sense of time, courts must do more to acknowledge legal rights for long-term caregivers who are psychological parents but not legal parents.” Anna Sortun, Comment, Rebutting the Parental Presumption in Oregon: Substantiating Emotional Bonds after Troxel v. Granville, 82 Or. L.Rev. 1191, 1197-98 (2003) (emphasis added).[23]
[¶ 65] Accordingly, our recent decisions regarding de facto parenthood have all concerned children who had been cared for by a nonparent over a significant period of time of at least five continuous years.[24] See Leonard v. Boardman, 2004 ME 108, ¶ 16, 854 A.2d 869 (eight years); Philbrook v. Theriault, 2008 ME 152, ¶ 12, 957 A.2d 74 (nine years); Young v. Young, 2004 ME 44, ¶ 2, 845 A.2d 1144 (five years); C.E.W. v. D.E.W., 2004 ME 43, ¶¶ 1-4, 845 A.2d 1146 (nine years); Stitham v. Henderson, 2001 ME 52, ¶ 2, 768 A.2d 598 (five years). The temporal aspect of the harm requirement ensures that de facto parent claims are limited to those cases in which it is *1193 probable that the child has become psychologically attached to the person claiming de facto parent status. This temporal aspect of harm is recognized by the American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations (2002) (“ALI Principles ”), which defines a de facto parent, in part, as an individual who has lived with the child “for a significant period of time not less than two years.” ALI Principles § 2.03(1)(c).
B. The Plurality Opinion’s Newly Announced Standards
[¶ 66] By recognizing the constitutional requirement of proof of harm, and also requiring clear and convincing evidence that a de facto parent has “undertaken a permanent, unequivocal, committed, and responsible parental role in the child’s life,” Philbrook, 2008 ME 152, ¶22, 957 A.2d 74 (quotation marks omitted), the plurality opinion reaffirms the standards that we have previously applied in cases involving de facto parents. See Plurality Opinion ¶¶ 17, 27. However, the Plurality Opinion goes further by reformulating or adding to these standards in five ways that create uncertainty or unnecessarily lower the bar for demonstrating a compelling state interest that would justify a court in overruling a fit parent’s decision regarding what is best for her or his child. As I will discuss in the final part of this opinion, none of these legal pronouncements are necessary to decide this case.
[¶ 67] First, the Plurality Opinion describes the degree of harm that must be shown as merely “that the child’s life would be substantially and negatively affected if the person who has undertaken a permanent, unequivocal, committed, and responsible parental role in that child’s life is no longer permitted to do so.” Plurality Opinion ¶ 29. Whether a child’s interests would be “negatively affected” by the denial of a nonparent’s request for a declaration of de facto parent status is simply a different way of asking whether an award of de facto parent status to a nonparent would be in the best interest of the child. The Plurality Opinion’s “negative effect” standard is vague and possibly unconstitutional given the United States Supreme Court’s conclusion in Troxel that the best interest of the child standard is constitutionally insufficient to support judicial interference with a parent’s rights. 530 U.S. at 67-73,120 S.Ct. 2054.
[¶ 68] Second, the Plurality Opinion does not recognize any minimum temporal requirement for de facto parenthood, whether the two-year requirement established by ALI Principles § 2.03(l)(c) or a longer period as reflected in our prior decisions. The Plurality Opinion thus deemphasizes the requirement that, for a court to review a fit parent’s decision to exclude a nonparent from the child’s life, it must be shown that the nonparent acted as a “primary caregiver and custodian for [the] child over a significant period of time.” Rideout, 2000 ME 198, ¶ 27, 761 A.2d 291 (emphasis added) (quotation marks omitted).
[¶ 69] Third, the Plurality Opinion distinguishes “parenting functions” from “caretaking functions,” and suggests that proof of the latter is required to establish a de facto parent/child relationship. Plurality Opinion ¶ 28. In so doing, the Plurality Opinion embraces a distinction made in ALI Principles § 2.03(l)(c) regarding de facto parents.[25] This approach, howev *1194 er, effectively excludes from de facto parenthood those individuals who might not qualify as de facto parents pursuant to ALI Principles § 2.03(i )(c) but would otherwise qualify as “parents by estoppel” pursuant to § 2.03(1)(b).[26] As the Massachusetts Supreme Judicial Court has recognized, under the ALI Principles, only a parent by estoppel, and not a de facto parent, “ ‘is afforded all of the privileges of a legal parent.’ ” A.H. v. M.P., 447 Mass. 828, 857 N.E.2d 1061, 1073 (2006) (quoting ALI Principles § 2.03 cmt. b). In contrast, under the approach adopted by the Plurality Opinion, only a de facto parent is afforded all the privileges of a legal parent. The Plurality Opinion’s approach leaves the state of our law confused in relation to both the law of Massachusetts, on which the plurality opinion is ostensibly based, and the ALI Principles.
[¶ 70] Fourth, in defining what it means for a parent to have “a permanent, unequivocal, committed, and responsible parental role in the child’s life,” Plurality Opinion ¶ 27 (quotation marks omitted), the Plurality Opinion quotes and adopts the definition of de facto parenthood expressed by the Massachusetts Supreme Judicial Court in E.N.O. v. L.M.M.:
A de facto parent is one who has no biological relation to the child, but has participated in the child’s life as a member of the child’s family. The de facto parent resides with the child and, with the consent and encouragement of the legal parent, performs a share of care-taking functions....
429 Mass. 824, 711 N.E.2d 886, 891 (1999). This excerpt quoted in the Plurality Opinion noticeably excises the last portion of the second sentence, which reads in its entirety: “The de facto parent resides with the child and, with the consent and encouragement of the legal parent, performs a share of caretaking functions at least as great as the legal parent.” Id. (emphasis added).[27] The Massachusetts Supreme Ju *1195 dicial Court reiterated its adherence to this requirement in A.H. v. M.P., 857 N.E.2d at 1070, and thus applies a standard that is more rigorous than the partial excerpt of the standard cited by the Plurality Opinion. The Plurality Opinion effectively relaxes the Massachusetts standard, explaining in a footnote that “[a]t this juncture, we do not set the bar so high for this portion of the de facto parenthood standard,” Plurality Opinion n.14, but offers no explanation as to why a less demanding approach is sound policy for Maine.
[¶ 71] Finally, without explanation, the Plurality Opinion adopts the less stringent preponderance of the evidence burden of proof, rather than the more demanding clear-and-convincing-evidence burden of proof, for purposes of determining the child’s best interest. Plurality Opinion ¶¶ 37-38. Proof of the child’s best interest to the standard of clear and convincing evidence is required, however, in order to narrowly tailor the extent to which the judicial process interferes with a parent’s fundamental liberty interest in parenting his or her child. See Davis, 2008 ME 125, ¶¶ 11-13, 19, 953 A.2d 1166; In re Amanda H., 2007 ME 43, ¶ 3, 917 A.2d 1120 (“A court may not enter an order terminating parental rights in the absence of an explicitly stated finding, by clear and convincing evidence, that termination is in the best interest of the child.” (quotation marks omitted)). In addition, the Plurality Opinion divorces the best interest determination from the threshold question of whether a nonparent should be declared a de facto parent in the first instance. See Plurality Opinion ¶¶ 37-38. Thus, a non-parent who may have had a permanent, unequivocal, committed, and responsible parental role in the child’s life in the past, but whose continued presence in the child’s life will be detrimental to the child, may nonetheless be entitled to a declaration of de facto parenthood.
[¶ 72] Defining de facto parenthood is a delicate task that should be preceded by a searching evaluation of the competing child welfare, family preservation, and related public policy issues that are involved. This is reflected both in the ALI Principles and in the Maine Legislature’s ongoing consideration of these very questions. See Resolve 2013, ch. 12, § 2 (noting that “Maine law may require clarification and updating with regard to issues relating to parental rights and responsibilities” when factual parentage is uncertain, and extending the date by which the Family Law Advisory Commission must report to the Legislature regarding its study of the Uniform Parentage Act and other similar laws and proposals). Thus, there exist sound reasons for the Court to exercise restraint and not announce new standards governing de facto parenthood, particularly where those standards are not required to fairly and fully adjudicate this appeal.
C. Proof of De Facto Parenthood in this Case
[¶ 73] By drawing from the existing standards employed in our prior decisions, we can and should conclude that Pitts failed to establish that he is a de facto parent for the following reasons.
[¶ 74] Pitts resided with Moore and the child from the child’s birth in November 2009 until November 2010. Accounting for a one-month period of separation between Moore and Pitts, Pitts resided with the child for approximately eleven months. This is far less than the two years required by the ALI Principles and the five or more years at issue in our recent decisions. Further, based on the court’s findings, Pitts failed to prove that he acted as the child’s primary caregiver during those *1196 eleven months, much less for a significant period of time.
[¶ 75] In addition, Pitts otherwise failed to prove that the child would suffer harm or the threat of harm if Moore stands by her decision to restrict her son’s relationship with him. The trial court recognized this deficiency when it concluded that it could not quantify or characterize the adverse effect of denying visitation to Pitts. Moreover, the court expressly declined to award Pitts parental rights and responsibilities beyond limited rights of contact, stating that Pitts “failed to demonstrate by clear and convincing evidence that any award of parental rights and responsibilities (decision making or any type of residential care) is in the best interest of the child.” One is hard-pressed to understand why a person found to be unsuited for parental responsibilities should qualify as a child’s de facto parent.
[¶ 76] There is nothing in the eviden-tiary record of this case that calls for the adoption of new de facto parent standards that are so malleable as to support an award of parental rights and responsibilities to Pitts. This child custody litigation should be brought to an end. I would vacate the trial court’s judgment and remand for entry of a judgment in favor of Moore.

. In Troxel, a nonparent visitation case, the Supreme Court’s plurality opinion did not reach the question of to what extent harm must be shown for a court to override a parent’s decision regarding third-party visitation:
Because we rest our decision on the sweeping breadth of [the visitation rights statute] and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court-whether the Due Process Clause requires all nonpa-rental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context.
Troxel v. Granville, 530 U.S. 57, 73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion).

. See, e.g., Fenn v. Sherriff, 109 Cal.App.4th 1466, 1 Cal.Rptr.3d 185, 201 (2003) (holding that a court may award custody to a third party, absent a showing of parental unfitness, "based on a clear showing that such award is essential to avert harm to the child” (quotation marks omitted)); DiGiovanna v. St. George, 300 Conn. 59, 12 A.3d 900, 908 (2011) ("[T]he court constitutionally may compel a parent to preserve a relationship between a child and a third party, even in the face of strong parental opposition, when the cessation of that relationship would cause substantial harm to the child.”); Beagle v. Beagle, 678 So.2d 1271, 1276 (Fla. 1996) (holding that a statute imposing grandparen-tal visitation rights over the objection of at least one parent was unconstitutional because it did not require the state to demonstrate harm to the child prior to the award of visitation rights); Clark v. Wade, 273 Ga. 587, 544 S.E.2d 99, 108 (2001) (interpreting the best interest standard of a parent-third party custody statute to require that the third party prove by clear and convincing evidence that "the child will suffer physical or emotional harm if custody were awarded to the biological parent”); Doe v. Doe, 116 Hawai'i 323, 172 P.3d 1067, 1079-80 (2007) ("[Pjroper recognition of parental autonomy in child-rearing decisions requires that the party petitioning for visitation demonstrate that the child will suffer significant harm in the absence of visitation....”); In re R.L.S., 218 Ill.2d 428, 300 Ill.Dec. 350, 844 N.E.2d 22, 30 (2006) ("State interference with fundamental parental child-rearing rights is justified in limited instances to protect the health, safety, and welfare of children.”); In re Marriage of Howard, 661 N.W.2d 183, 191 (Iowa 2003) (holding that a state may only compel grandparent visitation if there is "a showing of harm to the child beyond that derived from the loss of the helpful, beneficial influence of grandparents”); Gill v. Bennett, 82 So.3d 383, 390 (La.Ct.App.2011) (holding that custody may only be awarded to a nonparent if parental-custody would result in substantial harm to the child); A.H. v. M.P., 447 Mass. 828, 857 N.E.2d 1061, 1071 (2006) ("[Pjotential harm to the child is, of course, the criterion that tips the balance in favor of continuing contact with a de facto parent against the wishes of the fit legal parent, who has fundamental liberty interests in the child’s care, custody, and control.” (quotation marks omitted)); Rohmiller v. Hart, 811 N.W.2d 585, 595 (Minn.2012) (holding that, to be constitutional, a third-party visitation statute must require the court to conduct more than a mere best interest analysis in order to override a fit parent’s wishes); Locklin v. Duka, 112 Nev. 1489, 929 P.2d 930, 934-35 (1996) (”[E]x-traordinary circumstances sufficient to overcome the parental preference presumption are those circumstances which result in serious detriment to the child.”); McAllister v. McAllister, 779 N.W.2d 652, 658 (N.D.2010) ("When a psychological parent and a natural parent each seek a court-ordered award of custody, the natural parent’s paramount right *1192 to custody prevails unless the court finds it in the child’s best interests to award custody to the psychological parent to prevent serious harm or detriment to the welfare of the child.” (quotation marks omitted)); Neal v. Lee, 14 P.3d 547, 550 (Okla.2000) (holding that the trial court’s “vague generalization” about the positive effects grandparents have on their grandchildren fell "short of the necessary showing of harm which would warrant the state’s interference with this parental decision regarding who may see a child” (quotation marks omitted)); Clough v. Nez, 759 N.W.2d 297, 302 (S.D.2008) (holding that the "extraordinary circumstances” that would justify awarding nonparental visitation rights over a parent's objection must result in serious detriment to the child); In re Askew, 993 S.W.2d 1, 4 (Tenn.1999) ("[A] natural parent may only be deprived of custody of a child upon a showing of substantial harm to the child.”); In re J.C., 346 S.W.3d 189, 194-95 (Tex.App.2011) (recognizing that a child’s welfare may be significantly impaired by uprooting the child from a nonparental caretaker); Craven v. McCrillis, 178 Vt. 476, 868 A.2d 740, 742-43 (2005) (recognizing that "compelling circumstances” justifying interference with a parent’s visitation decision include proof that "significant harm to the child will result in the absence of a visitation order”); Florio v. Clark, 277 Va. 566, 674 S.E.2d 845, 847 (2009) (noting that the law's presumption in favor of awarding custody to a parent may be rebutted by a showing of an “extraordinary reason” for taking a child from the child’s parent, among other factors (quotation marks omitted)); In re Custody of Shields, 157 Wash.2d 126, 143, 136 P.3d 117 (2006) (en banc) ("[Pjarental rights may also be outweighed in custody determinations when actual detriment to the child’s growth and development would result from placement with an otherwise fit parent.").

. "Attachment Theory states that the propensity to form a strong emotional bond to particular caregivers is as fundamental in humans as the attachment behaviors that precede it.” Mary Elizabeth Putnick, The State as Parent: Using Attachment Theory to Develop Child Welfare Policy in the Best Interest of the Child, 24 N.Y.U. Rev. L. & Soc. Change 419, 423 (1998).

. This approach also respects the Legislature’s decision to generally limit a nonpar-ent’s ability to obtain parental rights and responsibilities absent parental consent, waiver, or circumstances involving jeopardy to the child. See, e.g., 18-A M.R.S. § 9-302 (2013) (articulating the requirements for adoption); 19-A M.R.S. § 1653(2) (2013) (setting forth the court’s authority to award parental rights and responsibilities, including to a nonparent); 22 M.R.S. §§ 4002(6), 4035, 4036, 4055 (2013) (governing the procedure for child protection and parental termination orders based on jeopardy and parental unfitness).

. ALI Principles % 2.03(l)(c) provides:
A de facto parent is an individual other than a legal parent or a parent by estoppel who, for a significant period of time not less than two years,
(i) lived with the child and,
*1194 (ii)for reasons primarily other than financial compensation, and with the agreement of a legal parent to form a parent-child relationship, or as a result of a complete failure or inability of any legal parent to perform caretaking functions,
(A) regularly performed a majority of the caretaking functions for the child, or
(B) regularly performed a share of care-taking functions at least as great as that of the parent with whom the child primarily lived.

. ALI Principles § 2.03(l)(b) provides:
A parent by estoppel is an individual who, though not a legal parent,
(i) is obligated to pay child support under Chapter 3; or
(ii) lived with the child for at least two years and
(A) over that period had a reasonable, good-faith belief that he was the child’s biological father, based on marriage to the mother or on the actions or representations of the mother, and fully accepted parental responsibilities consistent with that belief, and
(B) if some time thereafter that belief no longer existed, continued to make reasonable, good-faith efforts to accept responsibilities as the child's father; or
(iii) lived with the child since the child’s birth, holding out and accepting full and permanent responsibilities as parent, as part of a prior co-parenting agreement with the child’s legal parent (or, if there are two legal parents, both parents) to raise a child together each with full parental rights and responsibilities, when the court finds that recognition of the individual as a parent is in the child's best interests; or
(iv) lived with the child for at least two years, holding out and accepting full and permanent responsibilities as a parent, pursuant to an agreement with the child’s parent (or, if there are two legal parents, both parents), when the court finds that recognition of the individual as a parent is in the child’s best interests.

. This statement of the required proof encapsulates the requirement set out in ALI Principles § 2.03(1)(c). See supra n. 25.