MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 61
Docket:        Han-12-496
Argued:        September 10, 2013
Decided:       April 29, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
               JABAR, JJ.
Majority:      SAUFLEY, C.J., and ALEXANDER, LEVY, <u>SILVER</u>, MEAD, GORMAN, and
               JABAR, JJ.
Concurrence: ALEXANDER and LEVY, JJ.


JAMES R. EATON

v.

KELLY L. PARADIS


SILVER, J.

[¶1]  Andrea L. Brown, the mother of James R. Eaton, appeals from an order of the District Court (Ellsworth, *Romei, J.*) denying her petition for de facto parental rights with respect to her grandchildren.  Brown argues that the court erred in concluding that she failed to present sufficient evidence of her status as a de facto parent to establish that she has standing in a parental rights and responsibilities proceeding.  We vacate the judgment and remand the case to the District Court for further proceedings consistent with the standards and procedure set forth in *Pitts v. Moore*, 2014 ME 59, --- A.3d --- (plurality opinion).

## I.  BACKGROUND

[¶2]   On June 21, 2005, Eaton filed a complaint against Kelly L. Paradis, then Kelly L. Collins, in the District Court seeking a determination of paternity and an order of parental rights and responsibilities for T.E., then age two, and K.E., with whom Paradis was then pregnant.  On May 2, 2006, the court (*R. Murray, J.*) entered an order finding Eaton and Paradis to be the biological parents of the children and awarding primary residence to Paradis.

[¶3]   On November 28, 2007, however, Paradis asked Brown, Eaton's mother, to take the children because Paradis was being abused by her boyfriend. On January 10, 2008, Eaton filed a motion to modify seeking primary residence and sole custody of the children due to "on-going domestic violence in [Paradis's] home that resulted in [Eaton] obtaining a [protection from abuse order] against her current boyfriend," as well as abuse and neglect of the children.  On May 5, 2008, the court (*Staples, J.*) granted Eaton's motion and allocated primary residence of the children to Eaton, finding, among other things, that Paradis's new boyfriend had subjected her to "serious physical abuse," that T.E. had been struck while trying to protect Paradis, and that, as a result, T.E. suffered from an attachment

disorder and post-traumatic stress disorder. Paradis was granted supervised visitation.[1]

[¶4] On November 14, 2011, Paradis filed a motion to modify and enforce the court's order, seeking primary residence and sole parental rights and responsibilities. Paradis alleged that, contrary to the court's order of May 2008, the children were residing with Brown, not Eaton, and that Eaton was not sharing parental rights and responsibilities with Paradis or allowing visitation.[2] On December 5, 2011, Brown filed a petition for de facto parental rights. Eaton supported Brown's petition.[3]

[¶5] The court held a hearing on Brown's petition on February 13, 2012. Brown testified as follows: The children lived with Brown for most of their lives until 2006, when Paradis moved to Bangor, after which the children stayed with Brown every weekend. Since November 2007, however, the children have resided with Brown. Paradis rarely had contact with the children after November 2007 and made no effort to parent the children. Paradis said during this period that she "wasn't sure when she would ever be able to be a parent to the kids," and that "[a]t

---

[1] By an interim order entered September 21, 2012, the court (*Laskey, M.*) allowed Paradis unsupervised visitation with K.E. on an interim basis and set a timetable for removal of the supervision requirement as to T.E.

[2] Paradis had also filed a motion for contempt against Eaton on substantially the same grounds.

[3] Eaton has filed a brief in support of Brown's appeal.

4

that time . . . she had no interest in parenting the children." Brown took the children to their counseling, medical, and dental appointments. The children stayed with Eaton occasionally. The Department of Health and Human Services became involved in Eaton's life in 2008, when he and his wife had a "domestic situation." In addition, Eaton has a child from another relationship with special needs, further preventing him from taking on a larger role in parenting T.E. and K.E. T.E. calls Brown "Nanny," "Nanny-Mommy," and "Mommy"; T.E. also calls Paradis "Mommy," or sometimes "Kelly." K.E. calls Paradis "Mommy." Both children call Eaton "Daddy." The children "clearly understand who Daddy is and who Mommy is."

[¶6] Paradis also testified at the hearing as follows: Paradis is now married and she and her husband are both employed. She asked Brown to take the children in November 2007 because Paradis was being abused by her boyfriend and wanted the children to be safe. Brown and Brown's husband have been "parenting" the children since November 2007, and after Brown took the kids, Paradis was not "suitable for raising kids" because she had a drug problem. She abused pills on a daily basis from November 2007 to April 2010, when she went to rehab, and is currently on methadone. Paradis does not believe that she relinquished her parenting role to Brown, because Eaton had custody. She did not give Brown permission to become a parent of the children, nor discuss with Eaton giving up

their parental rights. The children call her "Mommy," and call Brown "Nanny." Paradis has had difficulty arranging visits with the children because her calls have not been returned.

[¶7] At the close of the hearing, the court (*Romei, J.*) denied Brown's petition for de facto parent status. The court found, on the record, that Brown had "acted as primary caretaker and custodian of these children for a significant period of time." The court further found that Paradis, because of her drug problem, did not have the "ability or the willingness" to act in that role for a period of time, and that Eaton had "delegated" primary residence of the children to Brown. Although the court recognized that Brown had a "parent-like" relationship with the children, the court concluded that neither the parents nor the children had acknowledged Brown as a parent as required by *Philbrook v. Theriault*, 2008 ME 152, ¶¶ 23-26, 957 A.2d 74, and Brown had therefore failed to establish standing to proceed further with her claim that she is a de facto parent. Brown subsequently filed a motion to reconsider, which the court denied on April 18, 2012. Brown appealed.

## II. DISCUSSION

[¶8] Parents have a fundamental right to direct the upbringing of their children, including the right to determine who may associate with their children. *See Davis v. Anderson*, 2008 ME 125, ¶ 18, 953 A.2d 1166; *Rideout v. Riendeau*, 2000 ME 198, ¶ 12, 761 A.2d 291 (plurality opinion). Nevertheless, we have

6

recognized that grandparents seeking parental rights over their grandchildren against the wishes of parents "may . . . file a parental rights and responsibilities proceeding, demonstrate to a court that they are the de facto parents of their grandchildren, and seek parental rights and responsibilities in accordance with that status." *Philbrook*, 2008 ME 152, ¶ 18, 957 A.2d 74.[4] As a threshold issue, the party claiming de facto parent status must first demonstrate standing:

> When any person who is not a legal parent, including a grandparent, seeks to have the court declare that that person is a de facto parent to a child over a parent's objection, the court must make a preliminary determination that such a relationship does in fact exist before a parent can be required to fully litigate the issue. This determination establishes whether a party has standing to seek the relief requested.

*Id.* ¶ 19 (citations omitted). "In this context, standing to seek parental rights and responsibilities requires a prima facie demonstration of de facto parent status." *Id.* ¶ 22. This preliminary requirement balances parents' fundamental rights against the legitimate interests of third parties in asserting their status as de facto parents. *Id.* ¶ 17.[5]

---

[4] As we have noted, there are also other means by which grandparents and other nonparents may be awarded parental rights or rights of visitation. *See Pitts v. Moore*, 2014 ME 59, ¶ 13 & n.5, --- A.3d --- (plurality opinion); *Philbrook v. Theriault*, 2008 ME 152, ¶ 18 & n.4, 957 A.2d 74.

[5] Although the court held a hearing rather than deciding the issue on affidavits, as in *Philbrook*, 2008 ME 152, ¶¶ 16-17, 957 A.2d 74, it is clear from the record that the court and the parties understood the issue at the hearing to be that of standing—not the ultimate issue of whether Brown actually *is* a de facto parent. *See Pitts*, 2014 ME 59, ¶¶ 35-37, --- A.3d --- (clarifying appropriate procedure on petitions for de facto parental rights).

[¶9] Although we have been discussing de facto parenthood for more than a decade, *see, e.g.*, *Rideout*, 2000 ME 198, ¶ 40, 761 A.2d 291 (Wathen, C.J., concurring); *Stitham v. Henderson*, 2001 ME 52, ¶ 17, 768 A.2d 598, we had not precisely articulated the standard by which petitions for de facto parental rights must be evaluated until our recent opinion in *Pitts v. Moore*. *See, e.g., Pitts*, 2014 ME 59, ¶¶ 24, 27, --- A.3d ---; *Philbrook*, 2008 ME 152, ¶ 22, 957 A.2d 74. The plurality opinion in *Pitts* stated:

> An individual seeking parental rights as a de facto parent must . . . show that (1) he or she has undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life, and (2) that there are exceptional circumstances sufficient to allow the court to interfere with the legal or adoptive parent's rights. Because the fundamental rights of a biological or adoptive parent are at issue and strict scrutiny must be applied to any interference with that right, and because the establishment of parental rights is no less permanent than the termination of parental rights, the petitioner must make those showings by clear and convincing evidence.

*Pitts*, 2014 ME 59, ¶ 27, --- A.3d --- (citations and quotation marks omitted).[6] Because we clarified the concepts necessary for a determination of de facto parenthood after the court denied Brown's petition for de facto parental rights, we remand the case to the District Court for reconsideration of the record, and any additional evidence submitted by the parties at the discretion of the court, in light of our opinion in *Pitts*. *See* 2014 ME 59, ¶¶ 40-41, --- A.3d ---.

---

[6] The concurring opinion in *Pitts* agreed with this standard except to the extent that the plurality opinion would require a showing of harm to the child in order to override a legal parent's rights. 2014 ME 59, ¶¶ 42-48, --- A.3d --- (Jabar, J., concurring).

8

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

ALEXANDER and LEVY, JJ., concurring.

[¶10] We concur that the judgment must be vacated and the case remanded based on the record before us. It is our view that, on remand, the trial court should apply the de facto parent determination standards set forth in the dissenting opinion in *Pitts v. Moore*, 2014 ME 59, ¶¶ 59-76, --- A.3d --- (Levy, J, dissenting).

---

**On the briefs and at oral argument:**

Jeffrey C. Toothaker, Esq., Ellsworth, for appellant Andrea Brown

Martha J. Harris, Esq., Paine, Lynch & Harris, P.A., Bangor, for appellee Kelly Paradis

Rosemarie Giosia, Esq., Ellsworth, for appellee James Eaton

Ellsworth District Court docket number FM-2005-143

FOR CLERK REFERENCE ONLY