845 A.2d 1146 (2004)
2004 ME 43
C.E.W.
v.
D.E.W.
Supreme Judicial Court of Maine.
Argued: February 13, 2003.
Decided: April 6, 2004.
Brian C. Hawkins, Esq. (orally), Bridgton, Maura A. Keaveney, Esq., Portland, for appellant.
Patricia A. Peard, Esq. (orally), Bernstein, Shur, Sawyer & Nelson, Kenneth P. Altshuler, Esq., Childs, Rundlett, Fifield, Shumway & Altshuler, Portland, Mary L. Bonauto, Esq., Gay & Lesbian Advocates & Defenders, Boston, MA, for appellee.
Michael Asen, Esq., Mittel, Asen, Eggert, Hunter & Cary, Portland, Judith M. Berry, Esq., Gorham, for amicus curiae.
Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.
LEVY, J.
[¶ 1] D.E.W. appeals from a summary judgment entered in the Superior Court *1147 (Cumberland County, Bradford, A.R.J.) determining that C.E.W., as a de facto parent of D.E.W.'s minor son, is entitled to be considered for an award of parental rights and responsibilities. C.E.W. has parented the child equally with D.E.W., the biological mother, since the child's birth in 1994, but is not related to the child biologically or by adoption. D.E.W. concedes that C.E.W. is the child's de facto parent. She contends, however, that the court erred by declaring C.E.W. to be eligible for an award of parental rights and responsibilities because D.E.W., as the child's biological parent, is available to exercise parental authority and there is no allegation that she has or will place the child in jeopardy. In the alternative, D.E.W. asserts that the court erred by declaring its intention to consider an award of parental rights and responsibilities to C.E.W. and must instead limit any award to reasonable rights of contact. We disagree with both contentions and affirm the judgment.

I. BACKGROUND
[¶ 2] The undisputed material facts[1] establish the following history. C.E.W. and D.E.W. started living together in early 1992 and agreed that D.E.W. would conceive a child through artificial insemination. In anticipation of the child's birth, both women changed their last names, taking the E. from C.E.W.'s family name and the W. from D.E.W.'s maiden name, so that they and the child would all have the same last name. Soon after the child's birth, C.E.W. and D.E.W. signed a parenting agreement detailing their intention to maintain equal parental rights and responsibilities for the child.
[¶ 3] In February 1999, C.E.W. and D.E.W. separated when D.E.W. moved out, leaving the child with C.E.W. in the family home. Following the separation, C.E.W. and D.E.W. signed a second parenting agreement that (1) provided that each parent would share equally all child-care and educational decisions and expenses; (2) allocated responsibility for the child's health insurance, dental insurance, and uninsured health care expenses; and (3) set forth a parent-child contact schedule for vacations, holidays, and special events. C.E.W. and D.E.W. also agreed "to take all steps necessary to maintain a close, loving and healthy relationship with both parents," but that the child's "[p]rimary residence and visitations will be determined by the legal system."
[¶ 4] In accordance with their agreements, C.E.W. and D.E.W. have generally parented the child as equals, sharing responsibility for the many decisions and personal sacrifices expected of loving and involved parents. The child, now age nine, has bonded with C.E.W. as his parent. The undisputed material facts suggest that the child is both happy and healthy.
[¶ 5] In November 2000, C.E.W. filed a complaint in the Superior Court containing two counts. The first count, citing the court's equity jurisdiction, sought a declaration of her parental rights and responsibilities for the child.[2] The second count sought to equitably estop D.E.W. from denying C.E.W.'s status and obligations as *1148 a parent. The Superior Court (Fritzsche, J.) granted C.E.W.'s motion to seal and impound the file, to proceed with pseudonyms, and to close the proceedings to the public. D.E.W. moved to dismiss the complaint, asserting that she was willing to permit C.E.W. visitation with the child, but that she opposed any award of parental rights and responsibilities to C.E.W. and that the court could not award such rights absent a showing that she, as the biological parent, has or will place the child in jeopardy. The Superior Court (Bradford, A.R.J.) denied the motion.
[¶ 6] C.E.W. subsequently filed a motion for a summary judgment. Based on the detailed, undisputed facts presented by the parties, the court accepted the parties' stipulation that C.E.W. had functioned as the child's de facto parent throughout his life and entered a summary judgment,[3] declaring C.E.W. eligible to be considered for an award of parental rights and responsibilities. The court also entered summary judgment in favor of C.E.W. on the second count, granting "C.E.W.'s claim that D.E.W. is equitably estopped from denying [C.E.W.'s] status as parent of [the child] with all rights and responsibilities of any parent under the State of Maine." D.E.W. appeals from the summary judgment as to Count I of the complaint, but not as to Count II.[4]

II. DISCUSSION
[¶ 7] Because D.E.W. did not controvert the material facts in C.E.W.'s statement of material facts, the material facts are deemed admitted, and our review is focused on any claimed errors of law. See M.R. Civ. P. 56(h)(4); Dickinson v. Clark, 2001 ME 49, ¶ 4, 767 A.2d 303, 305.
[¶ 8] D.E.W. asserts that the Superior Court erred in two respects. First, citing 19-A M.R.S.A. § 1653(2)(C) (1998),[5] she argues that an individual who is not related to a child biologically or by adoption can never be eligible for an award of parental rights and responsibilities as a de facto parent when there is a legal parent who wishes to exercise her or his parental rights, and it is not claimed that the legal parent has or will place the child in jeopardy.[6] Second, D.E.W. contends that even if a court may consider an award of parental rights and responsibilities in these circumstances, the remedy must be limited to an award of no more than "reasonable rights of contact" between the de facto parent and the child pursuant to section 1653(2)(B)[7] and may not include a broader award of parental rights and responsibilities *1149 authorized by 19-A M.R.S.A. § 1653(2)(D) (Supp.2003).
[¶ 9] We have recognized de facto parental rights or similar concepts in addressing rights of third persons who have played an unusual and significant parent-like role in a child's life in several opinions over the last sixty years. We most recently considered the concept of de facto parental rights and responsibilities in Stitham v. Henderson, 2001 ME 52, 768 A.2d 598. See also Young v. Young, 2004 ME 44, 845 A.2d 1144 (issued this date). There, Henderson believed that he was the child's biological father for the first three years of the child's life because he was married to the child's mother at the time of conception and birth. Id. ¶¶ 2-3, 768 A.2d at 599-600. Following a divorce and the entry of a judgment awarding shared parental rights and responsibilities for the child, he learned that he was not the biological father after DNA test results established that the mother's new husband was the child's biological father. Id. ¶ 3, 768 A.2d at 600. In a paternity action brought by the new husband, the Superior Court declared the new husband's paternity and dismissed, without prejudice, Henderson's counterclaim to establish equitable parental rights. Id. ¶¶ 4-5, 768 A.2d at 600. We held that the Superior Court correctly dismissed the counterclaim because there was a post-divorce motion between Henderson and the child's mother pending in the District Court, a court that "has jurisdiction to determine the parental rights regarding the children before it in divorce and post-divorce matters." Id. ¶ 17, 768 A.2d at 603. We concluded that "[b]ecause of his prior legal relationship to the child and his current role as a de facto parent, the District Court has jurisdiction to decide whether it is in the best interests of [the child] for Henderson to have a continuing role in [the child's] life and what that role should be." Id.
[¶ 10] We also observed in Stitham that "[m]atters involving the custody or best interests of a child are equitable in nature," and that "[t]he District Court is the forum where sensitive family matters should ordinarily be resolved." Id. ¶ 16 & n. 5, 768 A.2d at 603; see also In Re Shane T., 544 A.2d 1295, 1297 (Me.1988) (noting that proceedings to adjust the relationship between a parent and child were traditionally heard in equity). When exercising its parens patriae power, the court[8] puts itself in the position of a "wise, affectionate, and careful parent" and makes determinations for the child's welfare, focusing on "what is best for the interest of the child" and not on the needs or desires of the parents. Roussel v. State, 274 A.2d 909, 925-26 (Me.1971) (internal quotation marks and emphasis omitted) (recognizing that the court's equity jurisdiction authorized it to entertain a custody claim by a child's former foster parents). The now familiar "best interest of the child" standard, codified in Maine beginning in 1984,[9] *1150 stands as the cornerstone of the parens patriae doctrine. The standard is currently codified in section 1653(3)[10] and is expressed as a series of separate but related factors.[11] The standard, as codified, embodies the same parens patriae authority in judicial proceedings as extant under common law.[12] We have previously recognized *1151 that as a corollary of a court's equitable jurisdiction to determine a child's best interest and award parental rights and responsibilities, it may, in limited circumstances, entertain and award of parental rights and responsibilities to a de facto parent. Stitham, 2001 ME 52, ¶ 17, 768 A.2d at 603; Merchant v. Bussell, 139 Me. 118, 119-24, 27 A.2d 816, 817-19 (1942) (affirming the denial of a writ of habeas corpus brought by a father against his daughter's maternal grandmother where the daughter had been in the continuous care of the maternal grandmother since birth); see also Young, 2004 ME 44, 845 A.2d 1144 (issued this date); Roussel, 274 A.2d at 924 (recognizing in a custody action brought by a child's former foster parents that the court's authority to entertain the action was "derived from historically established Chancery usage, practice and power, to act on behalf of the sovereign as parens patriae and to adjudicate rights to the custody of infants guided by the paramount consideration of the dictates of the welfare of the child").
[¶ 11] Section 1653(2)(D), governing court orders for parental rights and responsibilities, and section 1653(3), requiring the application of the best interest of the child standard, embody the court's equitable jurisdiction to act as parens patriae. "[T]he Legislature intended for the courts in determining issues of custody in divorce proceedings to apply the equitably-based principles which are applied to custody determinations made under the full equitable jurisdiction, (deriving from the English Court of Chancery) which was originally granted by the Legislature to the Supreme Judicial Court in 1874." Harmon v. Emerson, 425 A.2d 978, 984 (Me.1981). Accordingly, when an individual's status as a de facto parent is not disputed and has been so determined by a court properly exercising jurisdiction in a declaratory judgment action pursuant to Title 19-A, the court may consider an award of parental rights and responsibilities to that individual as a parent pursuant to section 1653(2)(D), based upon a determination of the child's best interest pursuant to section 1653(3).
[¶ 12] Furthermore, and contrary to D.E.W.'s additional arguments, these statutory provisions are independent of and not preempted by the court's related, but discrete authority pursuant to the Uniform Act on Paternity, 19-A M.R.S.A. §§ 1551-1570 (1998 & Supp.2003); the adoption provisions of the Maine Probate Code, 18-A M.R.S.A. §§ 9-101 to 9-404 (1998 & Supp.2003); or the child guardianship provisions of the Maine Probate Code, 18-A M.R.S.A. §§ 5-201 to 5-212 (1998 & Supp. 2003). Neither the Uniform Act on Paternity nor the adoption and guardianship provisions of the Maine Probate Code applies here because C.E.W. does not seek a determination of paternity, an adoption, or a guardianship, and none of those remedies are conterminous with an award of parental rights and responsibilities.
[¶ 13] We do not address the separate and more fundamental question of by what standard the determination of de facto parenthood should be made. D.E.W. concedes that C.E.W. is the child's de facto parent, has accepted C.E.W.'s parental role in two written agreements, and has not challenged on appeal the court's conclusion that C.E.W. is the child's de facto parent. The Superior Court's determination of this issue is, therefore, the law of the case. See Dep't of Human Servs. v. Monty, 2000 ME 96, ¶ 7 n. 6, 750 A.2d 1276, 1278.
*1152 [¶ 14] The question of by what standard a person is determined to be a de facto parent implicates both the fundamental liberty interests of natural and adoptive parents, and the protection of those interests within title 19-A's framework for awards of parental rights and responsibilities to parents and third parties. Accordingly, we limit ourselves to the specific question presented regarding the remedy once, as here, de facto parenthood has been judicially determined, and we do not address the threshold question of the standard for determining de facto parenthood. However this term is ultimately defined as it is fleshed out by the Legislature or the courts in the future, it must surely be limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life.[13]

III. CONCLUSION
[¶ 15] D.E.W. has not challenged the Superior Court's conclusion that C.E.W. is the child's de facto parent, and that conclusion authorizes the court to consider an award of parental rights and responsibilities to C.E.W. as a parent based on its determination of the best interest of the child.
The entry is:
Judgment affirmed; remanded for further proceedings consistent with this opinion.
CLIFFORD, J., with whom RUDMAN, J., joins, concurring.
[¶ 16] It is undisputed that C.E.W. has acted as the child's parent from birth, has fully accepted responsibility for the child, and the child considers her to be his mother. In the circumstances of this case, C.E.W. is entitled to be considered for an award of parental rights and responsibilities. I write separately to emphasize that courts should be aware of, and give consideration to, existing legal and statutory remedies in the area of parental rights and responsibilities, and should exercise equity powers with caution. See Fisher v. Dame, 433 A.2d 366, 371 (Me.1981) (explaining that an effort to adjudicate using a court's equity jurisdiction is not available unless the remedy at law is inadequate).
[¶ 17] In the past, when the Court has invoked its equity jurisdiction in the area of child custody, there was virtually no statutory law. In Merchant v. Bussell, 139 Me. 118, 27 A.2d 816 (1942), we denied a father's petition to gain the custody of his child and recognized the parental-like status of the child's maternal grandmother. Id. at 124, 27 A.2d at 819. Today, a similar factual circumstance would likely be governed by statutory law enacted since Bussell. See 18-A M.R.S.A. § 9-204 (1998 & Supp.2003); 22 M.R.S.A. §§ 4050-4058 (2004).
[¶ 18] In more recent years, there have been substantial changes in the law relating to parental rights and responsibilities. The Legislature has enacted detailed statutes defining and governing the rights and responsibilities of parents, and has acted to provide carefully drawn statutory remedies for those who have or who seek parental rights or contact with children with whom they have established a relationship.
[¶ 19] Title 19-A M.R.S.A. § 1653 (1998 & Supp.2003) governs the rights and responsibilities *1153 of parents, sets out in detail what those rights and responsibilities entail, and provides when courts can issue orders addressing parental rights and responsibilities. Section 1653 was enacted after the Legislature made findings "in determining what is in the best interest of children." Id. § 1653(1).
[¶ 20] Title 19-A M.R.S.A. § 1653(2)(C) (1998) codifies the fundamental liberty interest of legal parents and expressly limits the circumstances under which courts can interfere with that liberty interest by granting parental rights and responsibilities to a third person. Section 1653(2)(C) reflects a determination by the Legislature that an award of parental rights and responsibilities to a third person is a substantial intrusion on the fundamental rights of a parent, and should be authorized only in very limited circumstances.
[¶ 21] Section 1653 does not explicitly limit the court's equity jurisdiction and parens patriae authority, and the trial courts continue to have equity jurisdiction and parens patriae authority in the area of child custody. Section 1653, however, does purport to govern "parental rights and responsibilities," 19-A M.R.S.A. § 1653(2), and was enacted to codify the findings of the Legislature "in determining what is in the best interest of children," id. § 1653(1). Because the law governing parental rights and responsibilities has become substantially statutory, we should be reluctant to authorize the broad exercise of the court's equity powers in this statutorily regulated area, at least until the statutory remedies are explored and determined to be inadequate.
[¶ 22] Not only should we be cautious about when a court should invoke its equity jurisdiction over parent-child relationships, the extent of that power should be closely reviewed as well. The status of a de facto parent should not always result, as a matter of law, in an award of full parental rights and responsibilities. In Stitham v. Henderson, we recognized the defendant's status as a de facto parent. 2001 ME 52, ¶ 17, 768 A.2d 598, 603. In doing so, we stated: "Because of his prior legal relationship to the child and his current role as a de facto parent, the District Court has jurisdiction to decide whether it is in the best interests of [the child] for Henderson to have a continuing role in [the child's] life and what that role should be." Id. We further noted the District Court's statutory authority to award Henderson contact with the child, even if he had to be labeled a third party, because he had significant bonds with the child. Id. ¶ 17 n. 6, 768 A.2d at 603. I read Stitham to hold that when a person is a de facto parent, the District Court may use its equitable power to determine the role that person has in a child's life, which could include an award of parental rights and responsibilities. Stitham, however, does not mandate such an award, and a court's award to a de facto parent of something less than full parental rights and responsibilities would not contravene Stitham's holding.
NOTES
[1] In response to C.E.W.'s motion for summary judgment, D.E.W. admitted all of the material facts set forth in C.E.W.'s statement of material facts pursuant to M.R. Civ. P. 56(h), but asserted that the stated facts were "completely immaterial." "Facts contained in a supporting ... statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4).
[2] Although C.E.W.'s complaint cited to Title 14, section 6051(13) (2003), the court's authority to act in equity regarding parental interests is found in Title 19-A, section 1653 (1998 & Supp.2003), see 4 M.R.S.A. § 152(11) (Supp.2003). See infra ¶ 11.
[3] In the face of dispute, a finding of de facto parentage would not be amenable to decision through the summary judgment process.
[4] Because the issue is not raised by D.E.W. on appeal, we do not address the Superior Court's award of summary judgment on C.E.W.'s equitable estoppel claim set forth in Count II of the complaint, as well as whether the court may, in effect, impose a prior restraint upon D.E.W. by ordering that she is equitably estopped from denying C.E.W.'s status as a parent.
[5] Section 1653(2)(C) provides:

The court may award parental rights and responsibilities with respect to the child to a 3rd person, a suitable society or institution for the care and protection of children or the department, upon a finding that awarding parental rights and responsibilities to either or both parents will place the child in jeopardy as defined in Title 22, section 4002, subsection 6.
19-A M.R.S.A. § 1653(2)(C) (1998).
[6] We note that although C.E.W. did not assert that D.E.W. has or will place the child in jeopardy and the court did not consider or address the criteria for a finding of jeopardy as defined in 22 M.R.S.A. § 4002(6) (2004), the court stated in its decision that if C.E.W. was excluded from the child's life, it would put the child in "jeopardy."
[7] "The court may award reasonable rights of contact with a minor child to a 3rd person." 19-A M.R.S.A. § 1653(2)(B) (1998).
[8] Subsequent to the filing of this action, statutory revisions to the jurisdiction of the Superior and District Courts transferred to the District Court, effective January 1, 2001, exclusive "[o]riginal jurisdiction, not concurrent with the Superior Court, of actions for divorce, annulment of marriage or judicial separation and proceedings under Title 19-A, except as otherwise specifically provided." 4 M.R.S.A. § 152(11) (Supp.2003) (emphasis added); see also 14 M.R.S.A. § 5953 (2003) ("Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed."). Future actions of this type will fall within the exclusive jurisdiction of the District Court.
[9] See 19 M.R.S.A. § 752(5), enacted by P.L. 1983, ch. 813, § 5 (effective July 25, 1984), repealed by P.L.1995, ch. 694, § B-1 (effective Oct. 1, 1997); Jacobs v. Jacobs, 507 A.2d 596, 598 (Me.1986) (applying the best interest of the child factors codified in section 752(5)); Ricci v. Delehanty, 1998 ME 231, ¶ 10, 719 A.2d 518, 521 (providing information about the repeal of section 752(5)).
[10] Section 1653(3) provides:

3. Best interest of child. The court, in making an award of parental rights and responsibilities with respect to a child, shall apply the standard of the best interest of the child. In making decisions regarding the child's residence and parent-child contact, the court shall consider as primary the safety and well-being of the child. In applying this standard, the court shall consider the following factors:
A. The age of the child;
B. The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;
C. The preference of the child, if old enough to express a meaningful preference;
D. The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;
E. The stability of any proposed living arrangements for the child;
F. The motivation of the parties involved and their capacities to give the child love, affection and guidance;
G. The child's adjustment to the child's present home, school and community;
H. The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;
I. The capacity of each parent to cooperate or to learn to cooperate in child care;
J. Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;
K. The effect on the child if one parent has sole authority over the child's upbringing;
L. The existence of domestic abuse between the parents, in the past or currently, and how that abuse affects:
(1) The child emotionally; and
(2) The safety of the child;
M. The existence of any history of child abuse by a parent;
N. All other factors having a reasonable bearing on the physical and psychological well-being of the child;
O. A parent's prior willful misuse of the protection from abuse process in chapter 101 in order to gain tactical advantage in a proceeding involving the determination of parental rights and responsibilities of a minor child. Such willful misuse may only be considered if established by clear and convincing evidence, and if it is further found by clear and convincing evidence that in the particular circumstances of the parents and child, that willful misuse tends to show that the acting parent will in the future have a lessened ability and willingness to cooperate and work with the other parent in their shared responsibilities for the child. The court shall articulate findings of fact whenever relying upon this factor as part of its determination of a child's best interest. The voluntary dismissal of a protection from abuse petition may not, taken alone, be treated as evidence of the willful misuse of the protection from abuse process;
P. If the child is under one year of age, whether the child is being breast-fed; and
Q. The existence of a parent's conviction for a sex offense or a sexually violent offense as those terms are defined in Title 34-A, section 11203.
19-A M.R.S.A. § 1653(3) (1998 & Supp.2003) (footnote omitted).
[11] The factors were originally derived from our application of the best interest standard in Costigan v. Costigan, 418 A.2d 1144, 1146-47 (Me.1980).
[12] "The statutorily specified factors are nothing more or less than itemized considerations that the trial judge would, in absence of statute, naturally take into account in exercising his [or her] sound judgment on the sensitive issue of child custody." Villa v. Smith, 534 A.2d 1310, 1313 (Me.1987). The factors allow "the trial court to retain sufficient flexibility to fulfill its function as parens patriae to the child." Id. The application of that authority is expressed by the court's award of shared, sole, or allocated parental rights and responsibilities pursuant to section 1653(2)(D)(1).
[13] The Superior Court concluded that the standard for the determination of de facto parenthood contained in the AMERICAN LAW INSTITUTE PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION § 2.03(1)(c) (2000) applies in Maine, citing Rideout v. Riendeau, 2000 ME 198, ¶ 27, 761 A.2d 291, 302, and the concurring opinion in Stitham, 2001 ME 52, ¶ 25, 768 A.2d at 605. Although both opinions cite to the A.L.I.'s PRINCIPLES, neither adopts its standard, nor do we do so today.