JABAR, J.,
with whom SILVER, J., joins, concurring.
[¶ 42] I join with the Plurality Opinion, which takes substantial steps to clarify this unsettled area of law, and with its result. However, on one aspect of the Plurality’s analysis, I disagree with it, and, necessarily, with the Dissent.[19] I do not join section 11(A)(2) of the Plurality Opinion, and I write separately because I do not believe that harm to the child is constitutionally required in order to obtain defacto-par-enthood status over a fit parent’s objection. See Troxel v. Granville, 580 U.S. 57, 73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion); Rideout v. Riendeau, 2000 ME 198, ¶ 23, 761 A.2d 291 (plurality opinion). But see Plurality Opinion ¶¶ 16, 29; Dissenting Opinion ¶ 62.
[¶ 43] The Plurality holds that, as a matter of constitutional law, persons seeking de facto parenthood status must demonstrate that “the child’s life would be substantially and negatively affected” be *1185 fore a court can award that status over a biological or adoptive parent’s objections. Plurality Opinion ¶29. I disagree. Parents’ fundamental rights to the custody and control of their children do not require a threshold showing of harm to the child before a court can interfere with those rights. See Troxel, 530 U.S. at 73, 120 S.Ct. 2054; Rideout, 2000 ME 198, ¶23, 761 A.2d 291. Rather, the appropriate constitutional inquiry should weigh both a parent’s fundamental liberty interests and a child’s interest in continuing contact with an adult “ ‘who has acted as a parent to [the child].”’ Rideout, 2000 ME 198, ¶27, 761 A.2d 291 (quoting Youmans v. Ramos, 429 Mass. 774, 711 N.E.2d 165,172 (1999)).
[¶ 44] Although the Dissent notes that we have “recognized ... [that] a compelling state interest requires a showing of some degree of harm or the threat of harm to the child before a court may interfere with the parental rights of a fit parent,” Dissenting Opinion ¶ 62, neither our precedent nor that of the U.S. Supreme Court has ever required harm to the child as the only compelling state interest to justify interfering with a parent’s fundamental liberty interest. Rather, in Troxel, the Supreme Court explicitly declined to address “whether the Due Process Clause requires ... a showing of harm or potential harm to the child as a condition precedent to granting visitation,” 530 U.S. at 73, 120 S.Ct. 2054, and it has not yet conclusively addressed the issue.[20]
[¶ 45] We have, however, addressed the question of whether some degree of harm or potential harm is a necessary prerequisite before awarding a right of custody or visitation to third parties. Rideout v. Riendeau, 2000 ME 198, ¶¶ 23-25, 761 A.2d 291 (plurality opinion). Contrary to the Dissent’s characterization of that case, a plurality of this Court concluded that a showing of harm is not constitutionally required. See id. But see Dissenting Opinion ¶ 62. In Rideout, the District Court had concluded that the Grandparents Visitation Act was unconstitutional because it did not require a finding of harm or a threat of harm as a precondition to interfering with the parents’ fundamental liberty interests. 2000 ME 198, ¶ 22, 761 A.2d 291. We vacated that judgment, stating, “An element of ‘harm’ in the traditional sense is not, however, the only compelling state interest extant when matters relating to the welfare of children are under scrutiny.” Id. ¶23 (emphasis added). We concluded that
although the threat of harm to a child is certainly sufficient to provide the State with a compelling interest, harm consisting of a threat to physical safety or imminent danger is not a sine qua non for the existence of a compelling state interest.... [Rather,] “[t]he natural right of a parent to the care and control of a child should be limited only for the most urgent reasons.” We conclude that “urgent reasons” exist, where, as here, a grandparent who has functioned as a parent to the child seeks continued contact with that child.
Id. ¶¶ 23-25 (footnote and citation omitted) (quoting Merchant v. Bussell, 139 Me. 118, 122, 27 A.2d 816 (1942)).
*1186 [¶ 46] Although I disagree with the Plurality’s conclusion that interference with a parent’s fundamental liberty interest requires a showing of harm to the child, we agree on several substantive points within the constitutional analysis. First, in both Maine and federal constitutional law, it is “firmly established” that a parent possesses a liberty interest, classified as a “fundamental right,” in making decisions regarding the custody and control of his or her child. Rideout, 2000 ME 198, ¶¶ 18-19, 761 A.2d 291; see also Trox-el, 530 U.S. at 65-66, 120 S.Ct. 2054; Merchant, 139 Me. at 122, 27 A.2d 816; Plurality Opinion ¶ 11. Second, we agree that an award of parental rights and responsibilities to a de facto parent unquestionably interferes with the parent’s protected liberty interest. See Sparks v. Sparks, 2013 ME 41, ¶ 20, 65 A.3d 1223 (“A court order that assigns even temporary rights to a nonparent interferes with the parent’s fundamental liberty interest.”); Plurality Opinion ¶ 17. In protecting that liberty interest, our decisions afford parents great protection by adopting a presumption that fit parents act in the best interests of their children and by requiring any interference with that interest to pass the strict-scrutiny test, which provides “that the State’s action [must] be narrowly tailored to serve a compelling state interest.” Rideout, 2000 ME 198, ¶ 19, 761 A.2d 291; Plurality Opinion ¶ 12.
[¶ 47] Third, we agree that both harm and the threat of harm to the child constitute a compelling state interest sufficient to override a parent’s fundamental liberty interest. Rideout, 2000 ME 198, ¶ 23, 761 A.2d 291 (“[T]he threat of harm to a child is certainly sufficient to provide the State with a compelling interest.”); Plurality Opinion ¶ 14. Finally, we agree that any interference with a parent’s fundamental liberty interest must be justified by something more than the best interest of the child. See Troxel, 530 U.S. at 72-73, 120 S.Ct. 2054; Rideout, 2000 ME 198, ¶23, 761 A.2d 291; Plurality Opinion ¶¶ 11, 39.
[¶ 48] However, we disagree on the issue of whether harm to the child is the only compelling state interest that justifies a court’s award of de facto parenthood status. See Plurality Opinion ¶¶ 16-17, 29; Dissenting Opinion ¶ 62. Because our decisions require any interference with parents’ due process rights to satisfy the strict scrutiny test, I set out the state’s compelling interest and narrowly tailored means for safeguarding those rights in the de facto parenthood context. See Rideout, 2000 ME 198, ¶ 19, 761 A.2d 291.
A. Compelling State Interest
[¶ 49] The state has a compelling interest to justify interfering with the decision making authority of a fit parent “only for the most urgent reasons,” Merchant, 139 Me. at 122, 27 A.2d 816, or in “exceptional circumstances,” Plurality Opinion ¶ 12 & n.3; see also Rideout, 2000 ME 198, ¶ 23, 761 A.2d 291. There are certain vitally important relationships that a child shares with persons other than that child’s biological parents that are worth preserving and urgent enough to warrant state intervention, even over the biological parent’s objection. Rideout, 2000 ME 198, ¶ 27, 761 A.2d 291. For example,
[w]hen a grandparent has been the primary caregiver and custodian for a child over a significant period of time, the relationship between the child and the grandparent warrants application of the court’s parens patriae authority on behalf of the child and provides a compelling basis for the State’s intervention into an intact family with fit parents.
Id. (quotation marks omitted).
[¶ 50] In order to safeguard the rights of the child, we have used our parens *1187 patriae authority to preserve close relationships between children and grandparents, id., and we should do the same to protect relationships between children and those persons who function as parents to the child. This approach recognizes that “[t]here is at a minimum a third individual, whose interests are implicated in every case to which [a de facto parenthood determination] applies — the child.” Troxel, 530 U.S. at 86, 120 S.Ct. 2054 (Stevens, J., dissenting); see also Plurality Opinion ¶ 12. “Consideration of rights the child holds is of paramount importance because, regardless of the family constellation from which the child comes, in any placement dispute it is the child who is the most vulnerable and the most voiceless.” In re Custody of Shields, 157 Wash.2d 126, 136 P.3d 117, 130 (2006) (Bridge, J., concurring). Recognizing the rights of de facto parents and children is part of a greater societal trend, as a plurality of the U.S. Supreme Court has observed:
The nationwide enactment of nonparen-tal visitation statutes is assuredly due, in some part, to the States’ recognition of the[ ] changing realities of the American family. Because grandparents and other relatives undertake duties of a parental nature in many households, States have sought to ensure the welfare of the children therein by protecting the relationships those children form with such third parties.
Troxel, 530 U.S. at 64, 120 S.Ct. 2054 (plurality opinion) (emphasis added).
[¶ 51] By reading the Due Process Clause to require the child to suffer harm or a threat of harm before awarding rights to a putative de facto parent, the Plurality and the Dissent focus solely on the rights of the parents to the exclusion of any competing interest of the child or third parties, who may have played a much greater role in the child’s life than the child’s biological parent. “To focus with strict scrutiny ... on the compelling interest of the state, vis-a-vis [only] the parents, is to ignore what may in a particular case be the equally compelling interests of the children, the family, and the [third parties seeking custody or visitation].” Rideout, 2000 ME 198, ¶39, 761 A.2d 291 (Wathen, C.J., concurring); see also Merchant, 139 Me. at 123-24, 27 A.2d 816.
[¶ 52] The expansive interpretation of parents’ due process rights elevates the rights of the biological relative at a time when advances in reproductive technology, the legalization of same-sex marriage, and the complexities of the modern family render biological ties less relevant in identifying familial relationships. See, e.g., Nolan v. LaBree, 2012 ME 61, ¶¶2-3, 5, 52 A.3d 923; St. Mary v. Damon, 309 P.3d 1027, 1029-31, 1032-35 (Nev.2013) (holding that both members of a same-sex couple could be considered “legal mothers” to a child born by implanting the fertilized egg of one partner into the other partner). Given the complexities of modern families, identifying the members of a child’s family is not reducible to single-factor discrete rules. As Justice Stevens noted in Troxel,
[a] plurality of [the U.S. Supreme] Court [has] recognized that the parental liberty interest was a function, not simply of “isolated factors” such as biology and intimate connection, but of the broader and apparently independent interest in family. A parent’s rights with respect to her child have thus never been regarded as absolute, but rather are limited by the existence of an actual, developed relationship with a child, and are tied to the presence or absence of some embodiment of family.
530 U.S. at 88, 120 S.Ct. 2054 (Stevens, J., dissenting) (citations omitted).
[¶ 53] Thus, if a person seeking de fac-to parenthood status has demonstrated *1188 that he or she has “fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child’s life,” C.E.W. v. D.E.W., 2004 ME 43, ¶ 14, 845 A.2d 1146 (emphasis added), the state has a compelling interest to intervene and apply its parens patriae authority to safeguard the relationships between children and their de facto parents.
B. Narrowly Tailored Means
[¶ 54] Our decisions governing de facto parenthood also feature narrowly tailored means for safeguarding this compelling state interest. First, the threshold requirements necessary for standing to bring a de facto parenthood claim are very stringent, requiring a person to demonstrate that he or she has “undertaken a permanent, unequivocal, committed, and responsible parental role in the child’s life.” See Philbrook v. Theriault, 2008 ME 152, ¶ 22, 957 A.2d 74 (quotation marks omitted).
[¶ 55] Second, in practice, we have upheld the use of this equitable remedy in very limited circumstances, namely, “when the individual was understood and acknowledged to be the child’s parent both by the child and by the child’s other parent.” Id. ¶ 28; Plurality Opinion ¶ 28. Third, a person seeking de facto parenthood status must now demonstrate that he or she has fulfilled a parental role by clear and convincing evidence. Plurality Opinion ¶27. Finally, we also now require a putative de facto parent to demonstrate that he or she has had direct involvement with the child by performing “caretaking functions.” Plurality Opinion ¶ 28 (quotation marks omitted). Because an award of de facto parenthood status is subject to these limitations, the state’s intrusion on parents’ rights is narrowly tailored to achieve its compelling interest in safeguarding the relationship between children and their de facto parents. Cfi Rideout, 2000 ME 198, ¶¶ 29-32, 761 A.2d 291.
C. Conclusion
[¶ 56] In evaluating de facto parenthood claims, the appropriate constitutional inquiry should weigh both the parents’ fundamental liberty interests and the interests of their children in continuing contact with “adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child’s life.” C.E.W., 2004 ME 43, ¶ 14, 845 A.2d 1146. The relationship between a child and an adult who has fulfilled this parental role is one of the most fundamentally important and formative relationships that child will have. Josh Gupta-Kagan, Children, Kin, and Court: Designing Third Party Custody Policy To Protect Children, Third Parties, and Parents, 12 N.Y.U. J. Legis. & Pub. Pol’y 43, 99 (2008) (“In reality, parents are not the only adults to have significant or even primary relationships with children; millions of children have such relationships with third parties.”); see also Rideout, 2000 ME 198, ¶ 40, 761 A.2d 291 (Wathen, C.J., concurring). Because the existing limitations that we have imposed on persons seeking de facto parenthood status are narrowly tailored to serve the state’s compelling interest in maintaining these fundamental relationships, no further showing of harm to the child is constitutionally required. In other words, I read the Constitution to say that there are “urgent reasons,” sufficient to constitute a compelling state interest, in maintaining relationships between de facto parents and children, without requiring a further showing of harm to the child. See Rideout, 2000 ME 198, ¶¶ 23-27, 761 A.2d 291.
[¶ 57] My concern is that if the Legislature takes up this issue and creates a *1189 statutory framework for establishing de facto parenthood status, it may view the necessity of showing “harm to the child” or the threat of harm to be a constitutional constraint on the factors that it deems relevant. The Dissent notes that “Numerous other jurisdictions also require a showing of harm or the threat of harm to the child before a court may award contact or parental rights over the objection of a fit parent.” Dissenting Opinion ¶ 63 & n.22. Of the cases that the Dissent cites, in several of the jurisdictions, the state legislatures have imposed the requirement of harm to the child by statute. See Cal. Fam.Code § 3041(a) (West 2007) (requiring the court, among other things, to “make a finding that granting custody to a parent would be detrimental to the child” before awarding custody to a nonparent); S.D. Codified Laws § 25-5-29(4) (2013) (requiring proof that “other extraordinary circumstances exist which, if custody is awarded to the parent, would result in serious detriment to the child” in order to rebut the presumption in favor of a fit parent’s decision). However, other state legislatures have enacted de facto parenthood statutes without requiring an element of harm to the child. See, e.g., Del.Code Ann. tit. 13, § 8-201(c) (2013); D.C.Code §§ 16-831.01(1), 16-831.03 (2013). Whether, as a matter of public policy, de facto parenthood claims in Maine should include harm or the threat of harm to the child, is for the Legislature, not this Court, to decide.
[¶ 58] Until the U.S. Supreme Court determines that the Due Process Clause requires an element of harm to the child before interfering with a fit parent’s rights, the State of Maine, through its Legislature, ought to be free to set public policy to determine whether harm should be part of the analysis.

. The Dissent agrees with the Plurality that a measurable degree of harm is required before interfering with a parent’s constitutional liberty interests, Plurality Opinion ¶ 16, Dissenting Opinion ¶ 62, but would require a much greater showing of serious harm to a child's "long-term physical, emotional, or developmental well-being." Dissenting Opinion ¶ 63.

. The Dissent states that the U.S. Supreme Court "did not reach the question of to what extent harm must be shown for a court to override a parent’s decision” regarding the custody and care of his or her children in Troxel v. Granville, 530 U.S. 57, 73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). Dissenting Opinion-¶ 61 n.21 (emphasis added). However, the Troxel Court expressly declined to decide "whether the Due Process Clause requires ... a showing of harm or potential harm to the child” at all. Troxel, 530 U.S. at 73, 120 S.Ct. 2054 (plurality opinion); see also id. at 76-77, 120 S.Ct. 2054 (Souter, J., concurring).