MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2022 ME 53
Docket:         Aro-22-24
Submitted
  On Briefs:    June 22, 2022
Decided:        November 1, 2022

Panel:          STANFILL, C.J., and MEAD, JABAR, HORTON, and LAWRENCE, JJ.

MICHELLE A. GARDNER

v.

LESLIE GREENLAW et al.


LAWRENCE, J.

[¶1]  Michelle A. Gardner, the maternal grandmother of the two minor children at issue in this case, appeals from a judgment of the District Court (Presque Isle, *Langner, J.*) dismissing with prejudice her complaints for determination of de facto parentage concerning those children.  The court determined that the issue preclusion branch of the res judicata doctrine completely barred the grandmother's claims because the issue of the children's best interests, raised by her complaints for de facto parentage, was already decided in a prior consolidated proceeding on competing guardianship petitions, where the guardianship court (Caribou, *Soucy, J.*) appointed Michael A. Greenlaw and Lynn M. Greenlaw, the maternal grandfather and his wife, as guardians of the children rather than appointing the grandmother.

2

[¶2]  Because we agree with the grandmother's contention that the best interests determinations required in the guardianship actions and in the actions for de facto parentage are distinct determinations, we vacate the court's judgment and remand the matter for the court to consider the grandmother's standing with respect to her complaints for de facto parentage and, if she demonstrates such standing, to proceed in accordance with 19-A M.R.S. § 1891 (2022).

## I.  BACKGROUND

[¶3]  The competing petitions to appoint guardians for the two children were filed by the grandmother and by the grandfather and his wife in 2019-2020.[1]  After a consolidated three-day hearing, the guardianship court granted the grandfather's petitions and denied the grandmother's petitions in judgments signed on March 29 and April 8, 2021.

[¶4]  Although the guardianship court found that the status quo favored appointing the grandmother as guardian because the children had spent significantly more time with her, it determined that the grandfather's home was

---

[1]  We take judicial notice of the docket entries in the guardianship actions and the docket entries in other prior proceedings involving the parties and these children. *See Cabral v. L'Heureux*, 2017 ME 50, ¶ 10, 157 A.3d 795 ("Courts may take judicial notice of pleadings, dockets, and other court records where the existence or content of such records is germane to an issue in the same or separate proceedings."); M.R. Evid. 201(b)-(d).  In this opinion, we refer to the petitions filed by the grandfather and his wife as the grandfather's petitions.

ultimately the more stable and healthy option.[2]  The guardianship court found that the appointment of the grandfather and his wife as guardians was in the children's best interests but also determined that it was in the children's best interests "to continue [their] relationship" with the grandmother.  The guardianship court accordingly established provisions, lasting six months, to assist with the children's transition to living with the grandfather and his wife, including a requirement that the children have visits with the grandmother "not less than weekly."  *See* 18-C M.R.S. § 5-211(1) (2022).[3]

[¶5]  On April 12, 2021, before appealing the guardianship court's judgments,[4] the grandmother filed complaints for determination of de facto parentage concerning both children.[5]  The grandfather and his wife filed an

---

[2]  The mother of the children, Leslie Greenlaw, and the father of the older child, Mark W. Hanning II, consented to the grandmother's petitions and did not consent to the grandfather's petitions.  The father of the younger child is deceased.  Before granting the grandfather's petitions, the guardianship court found that the parents were unwilling or unable to exercise their parental rights.  *See* 18-C M.R.S. § 5-204(2)(C)(1)-(2) (2022).  The mother of the children and the father of the older child are parties in the actions for de facto parentage.

[3]  The guardianship court further ordered that "if continuing regular contact . . . continues to be in the [children's] best interest[s], the guardians shall continue such contact."

[4]  On December 7, 2021, we affirmed the guardianship court's judgments, concluding that competent evidence supported its determination that granting the grandfather's petitions was in the children's best interests and that the guardianship court did not abuse its discretion.  *Guardianship by Michael G.*, Mem-21-125 (Dec. 7, 2021).

[5]  To be clear, we do not condone the grandmother's procedural tactics, particularly given the resulting misuse of judicial resources, the perpetuation of the "tug-of-war" between the grandmother and the grandfather and his wife (which the guardianship court feared was emotionally harming the older child), and the children's urgent "need [for] stability and permanence."  The guardianship actions began over three years ago, yet the grandmother delayed filing her complaints for de facto

4

answer to each complaint and moved to dismiss the complaints, invoking the issue preclusion branch of the res judicata doctrine. Specifically, they argued that a determination of the grandmother's status as a de facto parent would require the court to examine whether "[t]he continuing relationship between" the grandmother and the children is in the children's best interests, 19-A M.R.S. § 1891(3)(E), and that issue was already litigated and determined when the guardianship court found that granting the grandfather's petitions was in the children's best interests, *see* 18-C M.R.S. § 5-204(2) (2022).[6]

[¶6] The grandmother filed objections to the motions to dismiss, and, after holding a conference on December 8, 2021, the court dismissed the complaints with prejudice in a decision entered on January 12, 2022. The court concluded that (1) the issue of the children's best interests was central to both actions, (2) the guardianship court had determined that the "continuing relationship between" the children and the grandmother, compared to the

---

parentage until after she learned that the guardianship court denied her petitions. Moreover, the grandmother fully understood how to file a complaint for de facto parentage because she did so with respect to the older child in 2018, before the guardianship actions, and she also joined in filing petitions for three-party child protection proceedings regarding the children. Those cases were all dismissed, and the guardianship court found that the parties had agreed to resolve their differences regarding the children through the competing guardianship petitions.

[6] Title 18-C M.R.S. § 5-204(2)(C) (2022) was amended in 2021, effective after the guardianship court's judgments, to add a subsection not relevant in this case. *See* P.L. 2021, ch. 340, § 1 (effective Oct. 18, 2021) (codified at 18-C M.R.S. § 5-204(2)(C) (2022)).

children's relationship with the grandfather and his wife, "was not in the best interest of the children," and (3) the grandmother "had a fair opportunity and incentive" to address the issue and was thus estopped from relitigating the issue in a separate action. The court also determined that allowing the grandmother to proceed on the complaints for de facto parentage would be incompatible with the interests of justice and cause the parties to "be once again embroiled in bitter litigation."[7] The grandmother timely appealed. *See* 14 M.R.S. § 1901(1) (2022); 19-A M.R.S. § 104 (2022); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶7] The grandmother contends that the court erred because there were separate and distinct factual issues involved in the two proceedings and that, regardless, the issue of the children's best interests was resolved in her favor because the court determined that "it would be in each child's best interest to continue their relationship with" the grandmother. The grandfather and his

---

[7] In its judgment, the court also considered and dismissed a separate complaint for determination of de facto parentage filed by the younger child's paternal grandparents, Keith and Renee MacArthur, after concluding that they "failed to establish standing to maintain the action." *See* 19-A M.R.S. § 1891(2) (2022).

Further, in yet another instance of the claim splitting ensnarling the children at the center of this appeal, the court noted that the mother and the father of the older child had submitted a stipulated amended order in their parental rights and responsibilities action. The court stated that the stipulated order was intended to allocate to the grandmother certain rights of contact with the older child.

6

wife argue that the grandmother "purposefully engaged in claim splitting" and that the findings in the guardianship proceeding necessarily preclude the contrary finding, required for the grandmother to maintain her actions for de facto parentage, that the continuing relationship between the grandmother and children is in the children's best interests.

[¶8]  Issue preclusion is a branch of the res judicata doctrine, which "is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." *In re Children of Bethmarie R.*, 2018 ME 96, ¶ 15, 189 A.3d 252 (quotation marks omitted).  "[A]lso known as collateral estoppel," issue preclusion "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment" and the estopped party "had a fair opportunity and incentive in an earlier proceeding to present the same factual issue or issues it wishes to litigate again in a subsequent proceeding." *Guardianship of Jewel M.*, 2010 ME 80, ¶ 39, 2 A.3d 301 (quotation marks omitted).[8]  Issue preclusion applies "only if the identical issue

---

8  The other branch of res judicata, which is known as claim preclusion and is inapplicable here because the grandfather and his wife make no such assertion, "bars the relitigation of claims if[] (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Guardianship of Jewel M.*, 2010 ME 80, ¶¶ 39-40, 2 A.3d 301.

necessarily was determined by a prior final judgment." *Id.* (quotation marks omitted).

[¶9] We review de novo a court's determination that issue preclusion "bars a particular litigation." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097. We have stated that "[p]rinciples of res judicata must be applied with caution in domestic relations cases, as new developments often inform decisions as to what may be in the best interest of a child in circumstances where relationships must continue and will change over time until a child reaches majority." *Bethmarie R.*, 2018 ME 96, ¶ 15, 189 A.3d 252 (quotation marks omitted).

[¶10] A court may appoint a guardian for a minor child pursuant to the Maine Uniform Guardianship, Conservatorship and Protective Proceedings Act if the court finds that the proposed guardian is "suitable," the appointment "is in the best interest of the minor," and "the parents are unwilling or unable to exercise their parental rights." 18-C M.R.S. §§ 5-101, 5-204(2) (2022). The term "[b]est interest of the minor" is defined to mean "the best interest of the child according to the factors" in 19-A M.R.S. § 1653(3) (2022). 18-C M.R.S. § 5-102(4) (2022).

8

[¶11] For a court to adjudicate a person as a child's de facto parent pursuant to the Maine Parentage Act, the court must first determine, in a preliminary proceeding, that the person has established standing by presenting prima facie evidence of the statutory elements found in 19-A M.R.S. § 1891(3), and then determine, after a plenary proceeding, that the person has proved those same elements by clear and convincing evidence. *See* 19-A M.R.S. §§ 1831, 1891(2)(C)-(D), (3) (2022); *see Davis v. McGuire*, 2018 ME 72, ¶ 15, 186 A.3d 837. One of these elements is that "[t]he continuing relationship between the person and the child is in the best interest of the child."[9] 19-A M.R.S. § 1891(3)(E); *see* 19-A M.R.S. § 1653(3).

[¶12] The court was thus correct that the guardianship court applied a best interests standard in choosing between the competing guardianship

---

[9] Ultimately, the court must determine that the person seeking status as a de facto parent "has fully and completely undertaken a permanent, unequivocal, committed and responsible parental role in the child's life." 19-A M.R.S. § 1891(3) (2022). The other elements require the court to find that

> **A.** The person has resided with the child for a significant period of time;
>
> **B.** The person has engaged in consistent caretaking of the child;
>
> **C.** A bonded and dependent relationship has been established between the child and the person, the relationship was fostered or supported by another parent of the child and the person and the other parent have understood, acknowledged or accepted that or behaved as though the person is a parent of the child; [and]
>
> **D.** The person has accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation.

*Id.*

petitions and that a best interests determination also is pertinent to consideration of the grandmother's complaints for de facto parentage. The court erred, however, in concluding that there was total issue preclusion because the finding that the guardianship appointments, of the grandfather and his wife over the grandmother, would serve the children's best interests is not the determination of an issue identical to a finding of whether "[t]he continuing relationship between the [grandmother] and the child[ren]" is in the children's best interests. 19-A M.R.S. § 1891(3)(E); *see Marin v. Marin*, 2002 ME 88, ¶¶ 2, 5, 7, 10, 797 A.2d 1265 (concluding that the doctrine of res judicata did not bar the District Court from determining the father's parental rights and responsibilities in a divorce proceeding, despite the existence of a prior guardianship proceeding in Probate Court awarding co-guardianship to the child's maternal grandparents).[10]

[¶13] Simply put, there are less expansive remedies regarding parental duties and responsibilities available to a court when it appoints a person as a guardian than when it adjudicates a person to be a de facto parent. *Compare* 18-C M.R.S. § 5-207(1)-(2) (2022), *with* 19-A M.R.S. §§ 1653(2)(A)-(D),

---

[10] The *Marin* court noted, however, that the determination of parental rights and responsibilities in the divorce proceeding would be subject to the prior guardianship order. *Marin v. Marin*, 2002 ME 88, ¶¶ 3, 10, 797 A.2d 1265.

10

1891(4)(B) (2022).  The duties and responsibilities that the guardianship court assigned to the grandfather and his wife in their roles as guardians tracked the statutory language in 18-C M.R.S. § 5-207(1)-(2).[11]

[¶14]  By comparison, when a court adjudicates a person to be a de facto parent, it must "determine parental rights and responsibilities in accordance with section 1653."  19-A M.R.S. § 1891(4)(B); *see also C.E.W. v. D.E.W.*, 2004 ME 43, ¶¶ 10-11, 845 A.2d 1146.  The court's determination of a de facto parent's role depends on a child's best interest, *see* 19-A M.R.S. § 1653(3), and can be as

---

[11] Title 18-C M.R.S. § 5-207(1) (2022) reads, "Except as otherwise limited by the court, a guardian of a minor has the duties and responsibilities of a parent regarding the minor's support, care, education, health and welfare.  A guardian shall act at all times in the best interest of the minor and exercise reasonable care, diligence and prudence."  Pursuant to 18-C M.R.S. § 5-207(2) (2022), a guardian shall

> **A.** Become or remain personally acquainted with the minor and maintain sufficient contact with the minor to know of the minor's capacities, limitations, needs, opportunities and physical and mental health;
>
> **B.** Take reasonable care of the minor's personal effects and bring a protective proceeding if necessary to protect other property of the minor;
>
> **C.** Expend money of the minor that has been received by the guardian for the minor's current needs for support, care, education, health and welfare;
>
> **D.** Conserve any excess money of the minor for the minor's future needs, but if a conservator has been appointed for the estate of the minor, the guardian shall pay the money at least quarterly to the conservator to be conserved for the minor's future needs;
>
> **E.** Report the condition of the minor and account for money and other assets in the guardian's possession or subject to the guardian's control, as ordered by the court on application of any person interested in the minor's welfare or as required by court rule; and
>
> **F.** Inform the court of any change in the minor's custodial dwelling or address.

narrow or as broad as the court's parens patriae authority allows. *See C.E.W.*, 2004 ME 43, ¶¶ 10-11 & n.12, 845 A.2d 1146; *Stitham v. Henderson*, 2001 ME 52, ¶ 17, 768 A.2d 598 (explaining that given the party's position as a de facto parent, the court had the "jurisdiction to decide whether" it was in the child's best interest for that party "to have a continuing role in [the child's] life and what that role should be"). The remedies provided by the statutory provisions governing a guardianship proceeding are not "conterminous with an award of parental rights and responsibilities," which is the remedy pursuant to the statutory provisions regarding an action for de facto parentage. *C.E.W.*, 2004 ME 43, ¶ 12, 845 A.2d 1146.

[¶15] Here, due to the grandmother's claim splitting, the same parties that litigated the competing petitions for guardianship are before the court in the grandmother's actions for de facto parentage. In the guardianship proceeding, the grandmother and the grandfather and his wife clearly had a fair opportunity and incentive to address the issues of the primary residence of the children and the responsibility (i.e., decision-making authority) for the children's "support, care, education, health and welfare" (i.e., welfare and

well-being).[12]  18-C M.R.S. § 5-207(1).  The guardianship court appointed the grandfather and his wife as the children's guardians and in doing so awarded them both primary residence of the children and decision-making authority for the children's welfare and well-being.  *See id.*  Therefore, in the grandmother's actions for de facto parentage, issue preclusion appropriately would bar the court's reconsideration of the guardianship court's award of primary residence of the children and decision-making authority for their welfare and well-being to the grandfather and his wife.  *See Marin*, 2002 ME 88, ¶ 10, 797 A.2d 1265.

[¶16]  Although the guardianship court preliminarily determined that it was in the children's best interests to continue their relationship with the grandmother, through visits occurring not less than weekly, the guardianship court left open the nature of that relationship beyond the six-month transition period.[13]  Accordingly, if the court concludes that the grandmother has standing to pursue her complaints for de facto parentage, the determination of her parental rights and responsibilities would, at a minimum, allow the court to define her continuing relationship with the children (e.g., regular visitation), if

---

[12]  The guardianship court determined that resolution of the grandmother's and the grandfather's competing guardianship petitions was the agreed upon way in which the parties' dispute regarding the children was to be resolved.  *See supra* n.5.

[13]  See *supra* n.3.

it is in the children's best interests, subject to the guardianship judgments. *See* 19-A M.R.S. § 1891(4)(B).

## III. CONCLUSION

[¶17]  In summary, because the best interests determinations required in a guardianship proceeding are not identical to those in a proceeding for de facto parentage, issue preclusion does not prevent the court from considering the grandmother's complaints for de facto parentage.  For the reasons noted above, however, if the grandmother has standing to pursue de facto parentage, issue preclusion will constrain the parental rights and responsibilities that she may be awarded.  We therefore vacate the court's judgment and remand the matter for the court to consider the grandmother's standing to pursue her complaints for de facto parentage pursuant to 19-A M.R.S. § 1891 and, if she demonstrates such standing, to proceed in accordance with the statute.

The entry is:

> Judgment vacated.  Remanded for further
> proceedings consistent with this opinion.

James M. Dunleavy, Esq., Currier, Trask & Dunleavy P.A., Presque Isle, for appellant Michelle A. Gardner

Christopher M. Leger, Esq., Kelley & Leger Law Offices, Caribou, for appellees Michael A. Greenlaw and Lynn M. Greenlaw

Presque Isle District Court docket numbers FM-2021-108 and FM-2021-109
FOR CLERK REFERENCE ONLY