ALEXANDER, J.,
dissenting.
[¶ 21] I respectfully dissent.
[¶ 22] This appeal addresses a sad scenario that recurs hundreds or thousands of times a year in Maine — a child’s parent with primary residence of a child has a long-term relationship with a friend, fian-cée, or spouse who is not the child’s biological parent. The friend, fiancée, or spouse develops a positive, parent-like relationship with the child. The child’s parent and the friend, fiancée, or spouse then separate, and the child is saddened, or, as the trial court found here, “hurt” by the loss of contact with the now ex-friend, fiancée, or spouse.
[¶ 23] The parent-like relationship between Randall Kelley and the child existed for approximately two years following the birth of the child, before Jenna Gordius and Kelley separated. To that point, the relationship and the breakup tracked the scenario of thousands of similar cases,[5] circumstances the trial court found “sadly unexceptional.” Looking at similar separations, the trial court observed that termination of such relationships “can be deeply wounding” for the children involved. Significantly, the trial court did not find that beyond “hurt” feelings, the injury, loss, or hurt to the child in this case would be any different or greater than the *934 hurt to children in thousands of similar cases.
[¶ 24] The court’s explicit “sadly unexceptional” finding is a finding that Kelley failed to meet his burden to prove that the hurt, or “harm” to this child in this case is any different or greater than the hurt experienced by thousands of children experiencing similar circumstances. To emphasize its point that Kelley had failed to meet his burden of proof, the court also found that, regarding termination of the relationship between Kelley and this child the “circumstances cannot be deemed exceptional.” [6] Beyond referencing the trial court’s findings, it also must be emphasized that nothing in the record suggests that any hurt or harm to this child from termination of the relationship with Kelley was at all exceptional or indicated that the child’s suffered unusual long term emotional harm by loss of the relationship with Kelley that today is long in the past. A remand now will only add confusion and stress to the child’s life in Kelley’s effort to judicially reestablish a long-passed connection to the child.
[¶ 25] Jenna Gordius, the child’s mother, already has a court-ordered shared parental rights arrangement with her child’s biological father. That order appears to allow the child’s father approximately two days a week with his child, and parts of up to four days a week in some weeks. Awarding Kelley de facto parent status will inject a third party into the already divided visitation schedule; remove the child from home for more time each week; and increase confusion and instability in parenting and direction at a time when the child — any child — needs stability and consistent direction to support emotional development and well-being.
[¶ 26] The Court’s opinion is in reality remanding for a further explanation of the trial court’s explicit findings that Kelley had failed to meet his burden to prove that the hurt to this child was unusual or exceptional compared to other children in similar circumstances. Such a remand is unusual in appellate review practice in requiring a detailed explanation of a trial court finding that a party with the burden of proof has failed to meet that burden of proof. See Wandishin v. Wandishin, 2009 ME 73, ¶ 19, 976 A.2d 949 (trial court, having found the facts, need not explain rationale used to support each finding).
[¶ 27] A party, like Kelley, who has the burden of proof on an issue, can prevail on a challenge to a finding that his burden has not been met only if he can demonstrate that a contrary finding is compelled by the evidence. Guardianship of Gionest, 2015 ME 154, ¶ 5, 128 A.3d 1062. The Court should not utilize a claimed need for a more detailed explanation of the rationale for the trial court’s finding that Kelley failed to meet his burden of proof to turn an issue of fact into an issue of law to try to overturn a fact-finding the Court may not like.
[¶ 28] As the Court recognizes, Court’s Opinion ¶ 10, the law is “firmly established that parents have a fundamental liberty interest to direct the care, custody, and control of their children.” Davis v. Anderson, 2008 ME 125, ¶ 18, 953 A.2d 1166 (citing Troxel v. Granville, 530 U.S. *935 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); Rideout v. Riendeau, 2000 ME 198, ¶ 12, 761 A.2d 291 (plurality opinion)).
[¶ 29] The clear direction of the Gion-est, Davis, Troxel, and Rideout precedents is that our law recognizes and respects the constitutionally protected liberty interest of a parent or parents to parent their child free from state interference. Nothing in the record before us indicates harm to “this child ” that could meet the constitutional standard of a “dramatic, and even traumatic, effect upon the child’s well-being.” That is the degree of harm to a child that we have held is necessary to support a de facto parent award if, and only if, that harm is proven by clear and convincing evidence. Rideout, 2000 ME 198, ¶ 26, 761 A.2d 291.
[¶ 30] The Court’s focus on whether a child’s interests would be “substantially and negatively affected” by the denial of Kelley’s claim to de facto parent status is simply a different way of asking whether an award of de facto parent status to a nonparent would be in the best interest of the child. That “negative affect” standard, adopted in Pitts, and continued by the Court’s opinion here, is vague and likely unconstitutional given the United States Supreme Court’s conclusion in Troxel that the best interest of the child standard is constitutionally insufficient to support judicial interference with a parent’s rights. See Troxel, 530 U.S. at 67-73, 120 S.Ct. 2054. See also Samuel Johnson, Are You My Mother? A Critique of the Requirements for de Facto Parenthood in Maine Following the Law Court’s Decision in Pitts v. Moore, 67 Me. L. Rev. 354, 370-376 (2015).
[¶ 31] The District Court’s finding that Kelley failed to meet his burden to prove something less than the constitutional standard of “dramatic, even traumatic effect upon the child’s well-being” sufficient to support government interference with the parents’ rights to parent their child should be affirmed. This record does not compel findings, to the clear and convincing evidence standard, of harm that will have a “dramatic, and even traumatic effect upon [this] child’s well-being,” Rideout, 2000 ME 198, ¶ 26, 761 A.2d 291. Mandating further litigation now, and the potential injection into the child’s life of a contentious third party sharing parenting time and decision-making, will harm the child’s need for stability and consistent parental direction and support. Kelley and the child have now been separated for more than half of the child’s life. This litigation should end now. I would affirm the trial court’s judgment.

. Including the scenario in Pitts v. Moore, 2014 ME 59, ¶¶ 1-3, 90 A.3d 1169, which also involved a long-term relationship that ended nearly two years after the birth of the child.

. In its order, the District Court appears to have applied a preponderance of the evidence standard of proof to evaluate whether Randall Kelley had met his burden to prove de facto parent status. It then determined that Kelley had failed to meet even this lower burden of proof. Because an effort to establish de facto parent status seeks to have the Stale interfere in a parent’s fundamental constitutional right to parent a child, the clear and convincing evidence standard of proof applies to such efforts. See Guardianship of Gionest, 2015 ME 154, ¶5, 128 A.3d 1062; Pitts v. Moore, 2014 ME 59, ¶ 27, 90 A.3d 1169.